# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| DRAW ANOTHER CIRCLE, LLC, [1] *et al.*, | ) |
| | ) Case No. 16-11452 (KJC) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| CURTIS R. SMITH, LIQUIDATING TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOEL WEINSHANKER, ALAN VAN ONGEVALLE, CATHY HERSHCOPF, FRANK MARRS, and JEFFREY SHRADER, | ) Adversary Proceeding |
| | ) Case No. 17-51041 (KJC) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE TO DEFENDANT JOEL WEINSHANKER'S MOTION TO DISMISS AMENDED COMPLAINT

**GOLDSTEIN & MCCLINTOCK LLLP**
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, Delaware 19809
Telephone:  302.444.6710
Facsimile:  302.444.6709
e-mail: marias@goldmclaw.com

August 13, 2018

Thomas R. Fawkes, Esq.
Brian J. Jackiw, Esq.
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone:  312.337.7700
Facsimile:  312.277.2305
e-mail:  tomf@goldmclaw.com
          brianj@goldmclaw.com

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Draw Another Circle, LLC (2102); Hastings Entertainment, Inc. (6375); MovieStop, LLC (9645); SP Images, Inc. (7773); and Hastings Internet, Inc. (0809). Under the confirmed *First Amended Joint Combined Disclosure Statement and Plan of Liquidation* (Case No. 16-11452, Docket No. 1076, the "*Plan*"), all of the Debtors' bankruptcy cases aside from that of Draw Another Circle, LLC have been closed in the Bankruptcy Court.  Undefined terms capitalized herein shall have the meanings ascribed to them in the Complaint.

# TABLE OF CONTENTS

**Page**

Preliminary Statement…………………....……………………………………1

Legal Standard…………………………………....…………………………….5

Argument……………………………………………..…………………….…..7

    I.  The Liquidating Trustee Has Sufficiently Pleaded
Count I Alleging Breaches of Fiduciary
Duty Against Weinshanker……………………………………….……………7

        A. Nothing About the Liquidating
Trustee's Insolvency Allegations
Support Dismissal of Count I…………………………………….….………8

            1. The Liquidating
Trustee's Solvency Allegations
are Sufficient …………….…………………………..………….9

            2. The Trustee Can Pursue
Claims Based on Weinshanker's
Pre-Insolvency Conduct..……………..………………………15

        B. The Extinguishment of Intercompany
Claims Has No Effect on the Liquidating
Trustee's Claims Against Weinshanker……………………………...21

        C.  The Business Judgment Rule is Not
Appropriately Raised in the Second MTD………………………….26

    II.   The Liquidating Trustee Has Sufficiently Pleaded
Count VI Against Weinshanker for Piercing the
Veil of DAC…………………………………………………………………...30

    III.  While Count VII is Derivative of Counts I
and VI, Since Counts I and VI Should Survive
the Second MTD, So Should Count VII…………...…………………………36

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994)……………………………..…28

*Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171 (Del. 1988)………………………………………………………………..…………..16, 17, 19

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)………………………………….……………5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……..……………………..…............6

*Carrieri v. Jobs.com*, 393 F.3d 508 (5th Cir.2004)……………..…………………...9

*Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283 (Bankr. D. Del. 2006)…………………………………………………………………..…………..18

*Cochran v. Stifel Financial Corp.*, 2000 WL 286722 (Del. Ch. 2000)…………………18

*Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281 (Bankr. D. Ariz. 2007)……………………………………………………………17

*Curci Investments, LLC v. Baldwin*, 14 Cal.App.5th 214 (2017)………………………..32

*Delgado Oil Co. v. Torres*, 785 F.2d 857, 861 n. 11 (10th Cir.1986)…………………...21

*EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745 (Del. Ch. Sept. 2, 2008)……………………………...…………………………………...……33

*Fagan  v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex. Civ. App. 1973)…..….……17

*First Am. Corp. v. Al-Nahyan*, 17 F. Supp.2d 10 (D.D.C. 1998)…………..…...………17

*Floyd v. Hefner*, 2006 WL 2844245 (S.D. Tex. Sept. 29, 2006)……………..…………9

*Game Systems, Inc. v. Forbes Hutton Leasing, Inc.*, 2011 WL 2119672 (Tex. App. May 26, 2011)………………………..……………………………………………..…28

*Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707 (5th Cir. 1984)……………..17

*Hechinger Investment Co. of Del. v. Fleet Finance Group*, 274 B.R. 71 (D. Del. 2002)……………………………………………………………………...……..26

*Indus. Enters. Of Am., Inc. v. Tabor Academy (In re Pitt Penn Holding Co.)*, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011))……………..…………….……………5, 6

*In re Autobacs Strauss, Inc.*, 473 B.R. 525 (Bankr. D. Del. 2012)…………..……….10

*In re Central Illinois Energy Cooperative*, 561 B.R. 699 (Bankr. C.D. Ill. 2016)……....10

*In re I.G. Servs. Ltd.*, 2007 WL 2229650 (Bankr. W.D. Tex. July 31, 2007)………....9

*Torch Liquidating Trust ex rel. Bridge Associates LLC v. Stockstill*, 561 F.3d 377 (5th Cir. 2009)…………………………………………………………………...…….20, 21

*In re Tower Air*, 416 F.3d 229 (3d Cir. 2005)……………………………………...…..27

*In re Vartec Telecom, Inc.*, 2007 WL 2872283 (Bankr. N.D. Tex. Sept. 24, 2007)………9

*Joseph v. Frank (In re Troll Commc'ns, LLC),* 385 B.R. 110, 123-24 (Bankr. D. Del. 2008)……………………………………………………………………………………11

*Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110 (Del. 1994)………………....…….30

*La. World Exposition v. Fed Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988)………………21

*Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014)……………….……...…………13, 16, 17, 18, 19

*Meyer v. Fleming*, 327 US 161 (1946)………………………………………………..21

*MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010)…………………………………………………………….…………………..…33

*Miller v. McCown De Leeuw & Co. (In re The Brown Sch.)*, 368 B.R. 394 (Bankr. D. Del. 2007)…………………………………………………………………………...27

*Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984)………………..21

*Mixon v. Anderson (In re Ozark Rest. Equip. Co.*), 816 F.2d 1222, 1225 (8th Cir.1987)………………………………………………………………………………21

*NetJets Aviation, Inc. v. LHC Commc'ns LLC*, 537 F.3d 168 (2d Cir. 2008)…………...33

*North American Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007)…………………….………………………………..…....19, 20

*Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y. 2002)………………………………………………..……...26

*Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),* 326 B.R. 301, 306–07 (Bankr. D. Del. 2005)……………………………………………………11

*Official Comm. Of Unsecured Creditors v. The CIT Group/Business Credit, Inc., (In re Jevic Holdings Corp.),* 2011 WL 4345204, *9 (Bankr. D. Del. Sept. 15, 2011)…….11

iv

*Pepsi-Cola Metropolitan Bottling Company of Salisbury, Maryland v. Handy*, 2000 Del. Ch. LEXIS 52 (Mar. 15, 2000)……………………………………………...31

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008)………………………………6

*Plas-Tex, Inc. v. Jones*, 2000 Tex. App. LEXIS 3188 (Tex. Ct. App. May 18, 2000)……9

*Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014)……………………………………………...17

*Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)*, 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003)……………………………………………11

*Somerville S Trust v. USV Partners, LLC*, 2002 WL 1832830 (Aug. 2, 2002)………..…31

*Soroof Trading Development Co. Ltd. v. GE Fuel Cell Systems LLC*, 842 F.Supp.2d 502 (S.D.N.Y. 2012)……………………………………………….....31-32

*Stanziale v. Nachtomi*, 2004 WL 878469 (D. Del. Apr. 20, 2004)……………………....27

*Telxon Corp. v. Meyerson*, 802 A.2d 257 (Del. 2002)…………………………………...30

*Trustees of Village of Arden v. Unity Construction Co.*, 2000 Del. Ch. LEXIS 7 (Jan. 26, 2000)…………………………………………………………………………...31

*U.S. Bank Nat. Ass'n v. Verizon Comm Inc.,* 817 F. Supp. 2d 934, 943 (N.D. Tex. 2011)……………………………………………………………………………...10-11

*Wallace ex rel. Cencom Cable Income Partners II, Inc. L.P. v. Wood*, 752 A.2d 1175 (Del. Ch. 1999)……………………………………….….……………33, 34

*Weaver v. Kellogg*, 216 B.R. 563 (S.D. Tex. 1997)…………….….…………………………9

*Wooley v. Lucksinger*, 61 So.3d 507 (La. 2011)……………………………………..8, 9

**Statutes**

Fed. R. Bankr. P. 12(b)(6)…………………………………..……2, 5, 6, 10, 14, 27, 28, 32

Fed. R. Bankr. P. 7012……………………………………………………………………..2, 5

Tex. Bus. Orgs. Code § 21.418………………………………….….…………………....28, 29

Now comes Plaintiff Curtis R. Smith, Liquidating Trustee (the "*Liquidating Trustee*"), by his special litigation counsel, Goldstein & McClintock LLLP, and for his Memorandum of Law in Support of His Response to Defendant Joel Weinshanker's Motion to Dismiss Amended Complaint [Docket No. 30], states as follows:

## PRELIMINARY STATEMENT

On August 31, 2017, the Liquidating Trustee filed his complaint (the "*Complaint*") against defendants Joel Weinshanker ("*Weinshanker*"), Alan Van Ongevalle ("*Van Ongevalle*"), Cathy Hershcopf ("*Hershcopf*"), Frank Marrs ("*Marrs*"), and Jeffrey Shrader ("*Shrader*", and with Weinshanker, Van Ongevalle, Hershcopf, and Marrs, the "*Defendants*" and Van Ongevalle, Hershcopf, Marrs, and Shrader are referred to as the "*Non-Weinshanker Defendants*").  Among other things, the Complaint alleges breaches of fiduciary duties of the Defendants owed to Debtor Hastings Entertainment, Inc. ("*Hastings*") and its creditors, aiding and abetting breaches of fiduciary duties, and piercing the corporate veil.  The Liquidating Trustee alleges that the Defendants' conduct has caused the Debtors' estates and creditors at least $30 million in damages.

On October 27, 2017, Weinshanker filed his Initial Motion to Dismiss (the "*Initial MTD*"), in which he sought to dismiss Counts I (breach of fiduciary duty), VI (piercing the veil of Draw Another Circle, LLC ("*DAC*")), and VII (award of attorneys' fees) of the Complaint.  The Liquidating Trustee responded in kind and the Initial MTD was fully briefed.

However, before this Court could adjudicate the Initial MTD, the Liquidating Trustee, after several months of discussions with the Non-Weinshanker Defendants, agreed to attempt to resolve their disputes through non-binding mediation, and invited

Weinshanker to participate.   A mediation session took place in April 2018, but was unsuccessful.   Subsequently, the parties agreed to a briefing schedule that would permit the Liquidating Trustee to file an amended complaint to address the concerns raised by the Defendants at the mediation (despite the Liquidating Trustee's strong view that none of those concerns were sufficient to warrant dismissal of the original complaint), and the Liquidating Trustee did so on June 7, 2018 (Docket No. 24, the "*Amended Complaint*").

Notwithstanding the fact that each and every concern raised by the Defendants at the mediation was adequately addressed through the Amended Complaint, Weinshanker nevertheless asserts that the Liquidating Trustee's claims against him fail under Fed. R. Civ. P. 12(b)(6), made applicable hereto under Fed. R. Bankr. P. 7012, and has filed a motion to dismiss the Amended Complaint (Docket No. 30, the "*Second MTD*").   The Second MTD is nearly identical to the Initial MTD.

In the Second MTD, Weinshanker asserts that Count I of the Amended Complaint should be dismissed for several reasons:  (a) the Liquidating Trustee failed to adequately plead factual allegations concerning the insolvency of Debtor Hastings; (b) the Debtors' confirmed Plan waived intercompany claims, which therefore equates to a release of liability for Weinshanker; and (c) Weinshanker's conduct is shielded under the business judgment rule.   Count VI, Weinshanker argues, should be dismissed for two reasons: first, because of an alleged prohibition in Delaware on the piercing of the veil of a limited liability company; and second, because the Liquidating Trustee fails to plead that Weinshanker committed fraud, an element allegedly required to sustain a veil piercing claim.   Finally, Weinshanker argues that Count VII, for costs and attorneys' fees, which is contingent upon the survival of Counts I and VI, should also be dismissed.

2

Weinshanker's Second MTD, however, like the Initial MTD, is largely dependent upon misreadings of applicable law and a misunderstanding of the standards which complaints filed in this Court must satisfy, misinterpretations of the confirmed Plan and the powers accorded to the Liquidating Trustee under it, and most significantly, represents an improper attempt to litigate his supposed defenses to the Amended Complaint at the motion to dismiss stage.  In reality, the counts that Weinshanker seeks to have dismissed are more than adequately pled under the federal notice pleading standards, and represent claims that the Liquidating Trustee unquestionably holds and has standing to prosecute.

Count I is sufficiently pled because it puts Weinshanker squarely on notice of the breaches of fiduciary duty that he committed in relevant periods prior to the commencement of the Debtors' chapter 11 cases.  By asserting that Count I should be dismissed in its entirety because of a perceived lack of factual allegations concerning Hastings' insolvency, Weinshanker is attempting to pre-litigate an issue of fact usually measured by expert testimony (namely, the date on which Hastings became insolvent, which itself is not the correct standard by which to view the scope of the Liquidating Trustee's claims) without any discovery having been taken.  Indeed, the Liquidating Trustee has informed all the Defendants, not just Weinshanker, that its financial advisor is more than prepared to testify and provide expert reports (at the appropriate time) as to the Debtor's insolvency at all requisite times.  Indeed, all of the Defendants – including Weinshanker – had the opportunity to personally review the then-current insolvency analysis prepared by the Liquidating Trustee's financial advisor and to ask questions regarding it during the April 2018 mediation session.

To be clear, the Liquidating Trustee does not believe that Hastings' insolvency is a prerequisite for standing to pursue breach of fiduciary duty claims against Weinshanker nor is such a determination even appropriate at the motion to dismiss stage. Weinshanker's unsubstantiated argument that the Liquidating Trustee's claims are limited to only that conduct occurring once Hastings became insolvent, contradict well-settled Texas law, as well as the plain language of the Plan, which vests in the Liquidating Trustee the right to pursue not only derivative claims of Hastings' creditors (once Hastings became insolvent), but also direct claims of Hastings and derivative claims of Hastings' *shareholder* (Draw Another Circle, LLC ("*DAC*")), each of whom could bring derivative claims for breaches of fiduciary duty, including claims alleged when Hastings was solvent.  However, it is clear that this distinction is irrelevant because Hastings was insolvent throughout all or substantially all of the questioned transactions and breaches of duty committed by Weinshanker.

Moreover, Weinshanker's argument that he is shielded from fiduciary liability because of the Plan's extinguishment of intercompany claims not only belies a fundamental misunderstanding of the nature of claims brought against him, but contradicts the *express* preservation, and transfer to the Liquidating Trustee, of the very claims propounded in Count I.  Finally, whether Weinshanker is or is not able to avail himself of the business judgment rule is not only irrelevant to a motion to dismiss – as it is an affirmative defense for which specific facts must be established – but in any case, is largely inapplicable to the majority of the transfers and transactions discussed in the Amended Complaint.

4

Count VI must too survive the Second MTD.  Courts both in and outside of Delaware have recognized that based upon the facts and circumstances of a particular case, a limited liability company's veil may be subject to piercing, and certainly, no express prohibition of LLC veil piercing exists under Delaware law.  Moreover, the Liquidating Trustee has more than adequately pled a plausible claim for the piercing of the veil of DAC – an entity that was wholly owned and controlled by Weinshanker, and the vehicle through which Weinshanker's entire scheme, to the detriment of creditors, was carried out.

Finally, if we take Weinshanker's position regarding Count VII at face value, it follows that the survival of either Count I or Count VI must also result in the survival of Count VII.

As it will become clear in this memorandum of law, each of the Counts set forth in the Amended Complaint amply states a cause of action upon which relief can be granted.  The Second MTD must therefore be denied.

## <u>LEGAL STANDARD</u>

The purpose of a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "*Federal Rules*"), made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), is to test the sufficiency of a complaint's factual allegations.  *Indus. Enters. Of Am., Inc. v. Tabor Academy (In re Pitt Penn Holding Co.)*, 2011 WL 4352373, at *3 (Bankr. D. Del. Sept. 16, 2011).  "The court must assume the veracity of the factual allegations set forth in the complaint, draw all reasonable references from the facts alleged, and construe all allegations in the light most favorable to the plaintiff." *Id*. at *4 (citing *Ashcroft* v. *Iqbal,*

556 U.S. 662, 678-79 (2009)).  Moreover, "[t]he credibility of the facts alleged by the plaintiff are not at issue in a motion to dismiss because 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The Supreme Court has explained that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely," so long as there are "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556.

The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  Ultimately, the plaintiff is not required to definitively prove up its claims, but rather, establish that its claims are "plausible." *Twombly*, 550 U.S. at 555. Federal Rule 8 "does not impose a probability requirement at the pleading stage; but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 793 (3rd Cir. 2016) (citations omitted) (vacating dismissal of complaint:  "even if one believed it 'unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits,' it must still be said that [plaintiff] – under a favorable standard of review – has raised a reasonable inference that  discovery will reveal evidence of the elements necessary to establish the claims."); *Pitt Penn,* 2011 WL 4352373, at *4 n. 6 (citation omitted) ("a complaint may not be dismissed merely because

it appears unlikely that the plaintiff can prove [the facts alleged] or will ultimately prevail on the merits.").

There can be no doubt that the entire Amended Complaint, including the Counts that are the subject of the Second MTD, is more than sufficiently pleaded, and contains ample evidence and facts giving rise to the plausible entitlement to relief by the Liquidating Trustee and against Weinshanker.

## **ARGUMENT**

I.      **The Liquidating Trustee Has Sufficiently Pleaded Count I Alleging Breaches of Fiduciary Duty Against Weinshanker.**

The Amended Complaint contains sufficient facts evidencing the plausibility of the allegations included in Count I, which contends that Weinshanker breached his duties of obedience, care, loyalty, good faith, and fair dealing.   As acknowledged by Weinshanker, the Court need only "(1) identify [] the elements of the claim, (2) review[] the Amended Complaint to strike conclusory allegations, and . . . (3) look[] at the well-pleaded components of the complaint and evaluate[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." Second MTD, pg. 14.   In this case, the Liquidating Trustee has pleaded more than enough facts and evidence to easily survive the Second MTD.

As noted above, Weinshanker argues that Count I should be dismissed for three reasons:   (1) the failure of the Liquidating Trustee to adequately plead Hastings' insolvency; (2) the Plan's extinguishment of intercompany claims; and (3) Weinshanker's exercise of sound business judgment in his management and control of Hastings.   None of these arguments come close to justifying the dismissal of Count I.

7

**A.      Nothing About the Liquidating Trustee's Insolvency Allegations Support Dismissal of Count I.**

Weinshanker argues that count I must fail because the Liquidating Trustee cannot, as a matter of law, pursue breach of fiduciary duty claims based on conduct that occurred before Hastings became insolvent as the Liquidating Trustee supposedly failed to adequately allege Hastings' insolvency.   First and foremost, the Liquidating Trustee adequately alleges insolvency as of July 28, 2018.   Second, as explained below, this argument rests both on a false legal premise – that the Liquidating Trustee is limited to pursuing post-insolvency claims – and also misreads the Amended Complaint. Weinshanker's misreading of the Amended Complaint, as well as his faulty analysis of applicable law concerning fiduciary duties in Texas, should lead this Court to conclude that Weinshanker's reliance upon insolvency as a trigger for the Liquidating Trustee's breach of fiduciary duty claims is a red herring.   Moreover, the Court should further conclude that the Liquidating Trustee, while not required to plead insolvency, adequately did so.[2]

---

[2]      Indeed, the Liquidating Trustee filed its Amended Complaint after presenting significant evidence of insolvency to the Defendants, including a report prepared by BDO USA, LLC during an April 2018 mediation session.   The Liquidating Trustee elected not to attach BDO's expert report to the Amended Complaint as only a well-founded allegation of insolvency need be made at this stage of litigation.

1.      **The Liquidating Trustee's Solvency Allegations are Sufficient.**

Weinshanker does not dispute that the Liquidating Trustee could prosecute breach of fiduciary duty claims that arose after Hastings became insolvent, at which time his fiduciary duties began running to Hastings' creditors. *See* Second MTD at p. 16.[3]  He just says the Liquidating Trustee fails to adequately plead Hastings' insolvency. *Id.*

Directors of Texas corporations, however, owe fiduciary duties to creditors even prior to an insolvency, so long as "prejudice to the creditors" exists. *Plas-Tex, Inc. v. Jones*, 2000 Tex. App. LEXIS 3188, at *15 (Tex. Ct. App. May 18, 2000).  Prejudice to creditors occurs when "the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997). Moreover, "[o]fficers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' . . . have expanded fiduciary duties to include the creditors of the corporation." *Carrieri v. Jobs.com,* 393 F.3d 508, 534, n. 24 (5th Cir. 2004); *see also Weaver*, 216 B.R. at 582-84 (directors owe fiduciary duties to creditors when corporation is "in the vicinity of insolvency"); *In re I.G. Servs. Ltd.*, 2007 WL 2229650, at *3 (Bankr. W.D. Tex. July 31, 2007) (creditors can sue for breach of fiduciary duty when corporation is "zone of insolvency"); *In re Vartec Telecom, Inc.*, 2007 WL 2872283, at *2 (Bankr. N.D. Tex. Sept. 24, 2007) (same).[4]

---

[3]     *See also S*econd MTD, pg. 19.  Weinshanker cites to *Plas-Tex, Inc. v. Jones*, 2000 WL 632677 (Tex. App. May 18, 2000) which states that "However, when a corporation is insolvent, a fiduciary relationship arises between the officers and directors of the corporation and its creditors, and creditors may challenge a breach of fiduciary duty."

[4]     Weinshanker also cites *Floyd v. Hefner*, 2006 WL 2844245, at *10 (S.D. Tex. Sept. 29, 2006) to argue that fiduciary duties do not shift to creditors until the corporation has completely ceased operations, even if it had previously been insolvent.  To the extent *Floyd* can be read that way, which it cannot, however, it would directly conflict with the

While the relevant moment in time when duties shifted to creditors is not when Hastings became insolvent, but rather, when Weinshanker's misconduct started causing "prejudice to creditors" or when Hastings entered the "zone of insolvency," the Liquidating Trustee has sufficiently pleaded that Hastings was insolvent *no later than July 28, 2014*. And contrary to Weinshanker's suggestion, such insolvency-related allegations need not be pleaded with specificity. *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 554-55 (Bankr. D. Del. 2012) (broad allegations of insolvency sufficient for purposes of Federal Rule 12(b)(6)). This makes sense because insolvency is often a complex fact issue. As one court explained:

> In light of the difficulty of establishing exactly when insolvency occurred, which is usually a matter of expert opinion, it would make no sense at the pleading stage to require a plaintiff to separate [counts for pre- and post-insolvency breach of fiduciary duties] based upon a supposition about the timing of the entity's insolvency. The First Amended Complaint puts Smith on notice that the Trustee is asserting a breach of fiduciary duty for pre-insolvency and post-insolvency conduct. That is all that is required at this stage.

*In re Central Illinois Energy Cooperative*, 561 B.R. 699, 714-15 (Bankr. C.D. Ill. 2016). Indeed, virtually all of Weinshanker's violative conduct took place *after* Hastings was insolvent.

In order to sufficiently allege insolvency to withstand a motion to dismiss, the Plaintiff need only allege facts to make it plausible that the debtor was insolvent at the time of the subject transactions. *U.S. Bank Nat. Ass'n v. Verizon Comm Inc.*, 817 F.

---

multiple binding and precedential cases cited above. Indeed, it would also conflict with *Lightsway*, another decision heavily relied upon by Weinshanker, which recognizes that the duty shifts to creditors upon insolvency, not operational shutdown. *See* 520 B.R. at 471 (analysis "completely changes if . . . the Debtors were insolvent").

Supp. 2d 934, 943 (N.D. Tex. 2011) (finding allegation of balance sheet insolvency was sufficient to state a plausible claim for breach of fiduciary duty); *see also, Official Comm. Of Unsecured Creditors v. The CIT Group/Business Credit, Inc., (In re Jevic Holdings Corp.),* 2011 WL 4345204, *9 (Bankr. D. Del. Sept. 15, 2011) (finding allegation that debtor was insolvent or would have been rendered insolvent by the subject transactions were sufficient to survive motion to dismiss); *Joseph v. Frank (In re Troll Commc'ns, LLC),* 385 B.R. 110, 123-24 (Bankr. D. Del. 2008) (finding insolvency allegations were sufficient to withstand a motion to dismiss where the complaint alleged facts demonstrating debtors' liabilities exceeded their assets during the year before bankruptcy); *Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),* 326 B.R. 301, 306–07 (Bankr. D. Del. 2005) (deciding that allegations that a debtor was undercapitalized from its inception and did not have sufficient assets to at the time of the challenged transfers in order to satisfy obligations adequately alleged insolvency); *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.),* 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003) (concluding that general allegations of insolvency adequately gave fair notice to a defendant of the existence of that element of a fraudulent transfer claim).

Against that background, the Liquidating Trustee's allegations readily give rise to a reasonable inference that all of Weinshanker's misconduct prejudiced creditors and most, if not all, occurred after Hastings was insolvent, and inarguably, after Hastings was in the "zone of insolvency" or where there was "prejudice to creditors." Among other things, the Liquidating Trustee alleged:

- Hastings was in "severe financial distress" in mid- to late 2015, during the time in which Weinshanker directed the Elvis Transfers (Amended Complaint, ¶¶ 76 and 80);

- Hastings was insolvent and illiquid as of December 2014, when the Pathlight Paydown was made (Amended Complaint, ¶ 85);

- "…Hastings' insolvency, which increased significantly from the Buyout Date to the Petition Date." (Amended Complaint, ¶95);

- All or substantially all of the acts and omissions of Weinshanker and the non-Weinshanker Defendants occurred while Hastings was clearly insolvent on a balance sheet basis (Amended Complaint, ¶96);

- As an initial matter, Hastings' insolvency was propelled by the Weinshanker-led leveraged buyout, which added $15 million of secured debt to the company's books.  As a result, Hastings was insolvent by no later than July 28, 2014 (if not as of the Buyout Date itself) (Amended Complaint, ¶97)

- "Hastings was not adequately capitalized to absorb the burdens of" the transactions described in the Complaint (Amended Complaint, ¶ 174);

- "DAC and its subsidiaries, including Hastings, were insolvent, or became insolvent, during the period relevant to this Complaint" (Amended Complaint, ¶ 177).

The Liquidating Trustee also alleges, on multiple occasions, that Weinshanker's conduct constrained virtually all of Hastings' ability to borrow on the Bank of America revolving credit line, which allegations can be inferred as a further indicator of Hastings' insolvency (in that borrowing ability is a critical component of both funding inventory

purchases and satisfying trade liabilities).   Amended Complaint, ¶ 45 (Hastings'
availability projected to fall to $15 million in December 2014, only five months after the
Buyout Date, at which time it had $60 million of availability); ¶67 (after NECA Transfer,
Hastings only had $13 million of availability on the revolver).   Confusingly,
Weinshanker acknowledges many of these allegations, yet ignores their relevance.

Weinshanker also devotes a considerable portion of his Second MTD to a
discussion of *Lightsway Litigation Services, LLC v. Yung (In re Tropicana
Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014), where this Court dismissed a
breach of fiduciary duty count against the CEO of the debtors' ultimate parent.
Weinshanker relies on a statement in *Lightsway* which suggests that the only way of
meeting the burden of sufficiently pleading insolvency is pleading facts which show the
debtor has a (1) deficiency of assets below liabilities with no reasonable prospect that the
business can be successfully continued; or (2) an inability to meet maturing obligations as
they fall due in the ordinary course of business.

The Liquidating Trustee's allegations regarding insolvency, however, easily meet
the burden established by *Lightsway*.   Specifically, and in addition to the foregoing
allegations, the Liquidation Trustee alleges:

- "As a result, Hastings was insolvent by no later than July 28, 2014 (if not as of
  the Buyout Date itself)." (Amended Complaint, ¶97); and

- "Hastings was clearly insolvent on a balance sheet basis." (Amended
  Complaint, ¶96).

These statements include specificity of date and method of determining insolvency (on a
balance sheet basis).

Moreover, at the April 2018 mediation, the Liquidating Trustee provided both Weinshanker and the non-Weinshanker Defendants a draft copy of the insolvency analysis prepared by BDO, the Liquidating Trustee's financial advisor. This clearly put Weinshanker on notice of the specific facts underlying how and why the Liquidating Trustee has determined insolvency, and the extent to which Hastings was insolvent during several periods relevant to the Amended Complaint.

The entire thrust of the Amended Complaint is that Weinshanker's control and domination of Hastings resulted in the elimination of Hastings' borrowing ability, crippling illiquidity, and eventually, caused the Debtors to file chapter 11 cases and liquidate. To the extent it even matters, which it does not, the exact moment of Hastings' insolvency is a fact issue to be determined at trial, but as indicated previously, even at this early stage of the litigation, the Liquidating Trustee has an initial report prepared by BDO demonstrating severe insolvency on a balance sheet basis as of July 28, 2014; and given the state of Hastings' insolvency on that date, the Liquidating Trustee expects that he will be able to prove insolvency as of the Buyout Date of July 15, 2014. Weinshanker's argument that this issue somehow warrants dismissal ignores the law and disregards the Amended Complaint's allegations.[5]

Importantly, Weinshanker does not dispute that he owed a fiduciary duty to Hastings at all times after the Buyout Date, to the extent that Hastings was solvent. Second MTD, pg. 17 ("As a matter of Texas law, corporate directors owe duties to the

---

[5]     While the Liquidating Trustee believes that insolvency has been adequately pleaded for purposes of Federal Rule 12(b)(6), to the extent that the Court finds otherwise, the Liquidating Trustee respectfully requests leave to amend the Amended Complaint to address the Court's concerns.

corporation . . .").  This is consistent with the Liquidating Trustee's allegations in the Complaint, in which he distinguishes pre-insolvency duties from post-insolvency duties. Complaint, ¶ 101 ("As a director and an officer of Hastings, Weinshanker owed Hastings a duty of obedience, duty of care, duty of loyalty, duty of good faith, and duty of fair dealing."); ¶102 ("once Hastings entered the zone of insolvency, and subsequently became insolvent, Weinshanker's fiduciary duties . . . ran not only to Hastings, but to its creditors.").  Hence, this Court must find that Count I was sufficiently pled, regardless of whether Hastings was solvent or insolvent.  Accordingly, the Second MTD as to Count I should be denied.

> **2.   The Trustee Can Pursue Claims Based on Weinshanker's Pre-Insolvency Conduct.**

The Liquidating Trustee believes that the Hastings was insolvent at the time of every challenged bad act.  However, as earlier noted, in this particular case, Hastings need not have been insolvent for the Liquidating Trustee to pursue breach of fiduciary duty claims against Weinshanker.

The Plan transferred to the Trustee ownership of all claims "of any Debtor and/or any of the Estates against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise." Plan, at pg. 7.   Weinshanker argues that broad language excludes claims based on conduct that occurred before Hastings became insolvent because, until the moment of insolvency, he did not owe a fiduciary duty directly to Hastings – instead his duty ran only to Hastings' parent company, DAC.  Second MTD, p. 16.[6]

---

[6]      The Plan's vesting of Retained Causes of Action in the Liquidating Trustee is quite broad, and does not contain any exclusions or limitations based on solvency.  First,

Weinshanker relies primarily on *Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014), where this Court dismissed a breach of fiduciary duty count against the CEO of the debtors' ultimate parent, citing a line of Delaware cases holding "directors of [a wholly-owned] subsidiary are obligated only to manage the affairs of the subsidiary in the best interest of the parent and its shareholder," even if it devalues the subsidiary. *Id*. at 470 (quoting *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174 (Del. 1988)).  Given *Anadarko*'s apparent, but misplaced, repudiation of fiduciary duties flowing directly to the subsidiary, this Court went on to say that "[a]ny fiduciary duties which [the CEO] owed to the [subsidiary] Debtors flowed to . . . the sole shareholder and parent of the Debtors."  *Id.* at 471 (explaining that the only viable pre-insolvency breach of fiduciary duty claims are those the parent could and would have prosecuted derivatively).  Based upon this recitation of Delaware law, the Court concluded that Wimar was essentially the party to whom fiduciary duties ran, and that the litigation trustee did not allege that Yung's conduct was not in the best interests of Wimar.  What is not expressly stated, but

---

Article IX(B) of the Plan states that "[o]n the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing Retained Causes of Action."  Plan, Article XI(B).  The Plan also provides that "[p]ursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust . . ."  Plan, Article XI(D).  "Liquidating Trust Assets" are defined to include:  "the Retained Causes of Action," but exclude "any Cause of Action or Claim released pursuant to the terms of this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the Final DIP Order or any other Final Order of the Bankruptcy Court."  Plan, at pg. 12.  "Retained Causes of Action" are defined as "all Causes of Action and Retained Avoidance Actions . . . including Retained Avoidance Actions and D&O Claims."  Plan, at pg. 15.  "D&O Claims" are defined as "Causes of Action against any current or former directors and/or officers of the Debtors, for, inter alia, actual fraud, willful misconduct, gross negligence, negligence, breach of fiduciary duty, breach of the duty of care, or breach of the duty of loyalty."  Plan, at pg. 8.

can be clearly gleaned from the *Lightsway* opinion, is that even if the litigation trustee *did* allege that Yung's conduct was not in Wimar's best interest, such allegations would be irrelevant because the trustee did not have standing to assert claims derivatively on behalf of Wimar (as Wimar was a non-debtor whose causes of action were not transferred to the litigation trust).

*Lightsway* and the cases it cites all involve Delaware corporations subject to Delaware law.  Hastings, however, was a Texas corporation, and under that state's law "a subsidiary's director/officer has a fiduciary duty to the subsidiary corporation itself, even if wholly-owned, which is separate from their fiduciary duty to the parent corporation." *Wooley v. Lucksinger*, 61 So.3d 507, 590-92 (La. 2011) (applying Texas law).[7]  *Wooley* concluded that Texas courts would read *Anadarko* narrowly based on numerous cases that have "criticized [*Anadarko*] as having been extended beyond its original intent."  *Id.* at 589 (citing, *inter alia*, *First Am. Corp. v. Al-Nahyan*, 17 F. Supp.2d 10, 26 (D.D.C. 1998)) ("directors of a wholly-owned subsidiary owe the corporation fiduciary duties, just as they would any other corporation"); *Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281, 284-5 (Bankr. D. Ariz. 2007) (noting *Anadarko* itself cautioned its ruling should be "confined to specific facts"; extending it more broadly could lead to "shocking results," including depriving a wholly-owned subsidiary of a

---

[7]  *Wooley* reflects well-settled Texas law that "a director is duty-bound to exercise business judgment for the sole benefit of the corporation, and not for the benefit of individual shareholders." *Ritchie v. Rupe*, 443 S.W.3d 856, 869 (Tex. 2014). *See also Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 721 (5th Cir. 1984) ("the directors' duties of loyalty and care run to the corporation, not to individual shareholders or even to a majority of the shareholders").  Weinshanker incorrectly says *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App. 1973) held directors owe duties to the corporation *and* stockholders. Second MTD, p. 13. The *La Gloria* court did no such thing; rather, it limited fiduciary duties to the corporation.  *Id.*

breach of fiduciary duty claim against "a director self-deal[ing] at the expense of his corporation," even "though it would have such a cause of action if just one share of its stock were owned by someone other than the parent").[8]

Because, under Texas law, Weinshanker owed fiduciary duties to Hastings separate from his fiduciary duties to DAC, Hastings could have had claims against Weinshanker for breaching those duties prior to its insolvency.  As noted above, the Plan gave the Liquidating Trustee full ownership of any such claims, and empowered him to prosecute them.  The Liquidating Trustee's breach of fiduciary duty claims thus do not depend on any allegations or findings of Hastings' insolvency.

In any event, this case is factually distinct from *Lightsway.*  The *Lightsway* plaintiff was the litigation trustee only of the debtor-subsidiaries, not of the parent (Wimar), and thus did not own the parent's causes of action; he also claimed the defendant mismanaged the subsidiary for the benefit of the parent.  *See Lightsway*, 520 B.R. at 471.  Here, however, the Liquidating Trustee is not only the trustee of Hastings, but is also the trustee of DAC, Hastings' parent company.  Accordingly, the Liquidating Trustee owns and is empowered to prosecute – irrespective of insolvency - all claims of both the subsidiary (Hastings) and the parent (DAC).

---

[8]     *Wooley* also cited several Delaware court decisions that have read *Anadarko* more narrowly. *See, e.g.*, *Cochran v. Stifel Financial Corp.*, 2000 WL 286722 (Del. Ch. 2000) (subsidiary had a breach of fiduciary duty claim separate and distinct from a claim of parent corporation; "[o]ur law has traditionally respected the separate existences of a parent corporation and its wholly-owned subsidiary" and "[n]or are [we] inclined to read . . . an automatic conflation of a parent corporation and its wholly-owned subsidiary"); *Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 290 (Bankr. D. Del. 2006) (director of a wholly-owned subsidiary owes fiduciary duties to the subsidiary corporation; all that changes in insolvency is that the director will also owe a fiduciary duty to the subsidiary's creditors).

In the present case, several of the challenged transactions were *per se* not in "the best interests of [the parent]" (*id*.), as those transactions benefitted Weinshanker personally or his other entities, such as National Entertainment Collectibles Association ("*NECA*") and Exhibit A Circle, LLC ("*EAC*"), which were not owned by DAC. *See* Complaint, ¶¶ 65-66 (alleging that the NECA Transfer, in the amount of $1,621,500, was made for the benefit of NECA, or even possibly, Weinshanker himself); ¶76 (allegations concerning Weinshanker's use of Hastings as source of no-cost capital and inventory for the Elvis Exhibition (which benefited EAC)); ¶78 (Hastings' net cash outlay on Elvis Exhibition was $1.375 million); ¶80 (alleging Elvis Transfers benefitted Weinshanker and his entities exclusively).   Indeed, because the Liquidating Trustee alleges that the other companies that Weinshanker brought under the DAC umbrella using Hastings' money – MovieStop and SPI – were hopelessly distressed at the time of the acquisition and at all times thereafter, and because Weinshanker's activities ultimately caused *all* of the entities (including DAC) to file for bankruptcy and liquidate, a reasonable inference can be drawn that *none* of the transfers and transactions discussed in the Complaint benefited DAC.   Assuming that the *Anadarko* line of cases even apply – which they do not – they provide no basis to bar breach of fiduciary duty claims in these circumstances, since the parent (DAC) could have brought them derivatively as a shareholder of the subsidiary (Hastings).   *North American Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) ("[w]hen a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's grown and increased value.") (quoted by *Lightsway*, 520 B.R. at 470).

*Lightsway* is clearly distinguishable from the situation at bar.  Indeed, other Courts confirm that a Trustee may bring direct causes of action against a debtor's insiders for breach of fiduciary duty, even when the corporation is solvent.  In *Torch Liquidating Trust ex rel. Bridge Associates LLC v. Stockstill*, 561 F.3d 377 (5th Cir. 2009), the Liquidating Trustee raised derivative causes of action based on a lower court's earlier ruling.  The Fifth Circuit, however, stated that the Trust's derivative suit was "ill conceived." *Id* at 385.  The Circuit Court went on to say that the trustee had standing to bring a direct suit on behalf of the Trust for the debtor's claims against its directors.  *Id.* The Fifth Circuit went on to state: "Under Delaware law, a claim alleging the directors' or officers' breach of fiduciary duties owed to a corporation may be brought by the corporation or through a shareholder derivative suit when the corporation is solvent…" *Id.  (See also. Gheewalla,* 930 A.2d 92 (Del.2007)).

Indeed, the *Torch* court stated that upon filing its chapter 11 petition, the debtor owned claims against the directors for breach of fiduciary duty, which then became part of the estate. *Id.* at 388.  When the *Torch* plan was confirmed, it transferred the remaining debtor's assets to a trust.  *Id.*  The trustee was appointed to administer those assets, and accordingly, had the right to prosecute any D&O claims against the director of the debtor *Id.*

Moreover, it seems that in a chapter 11 bankruptcy proceeding, there can be no question that the right to sue on breaches of fiduciary duty belong to the debtor and ultimately the estate.  The filing of a chapter 11 petition creates an estate comprised of all the debtor's property, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). *Torch Liquidating Trust ex*

*rel. Bridge Associates LLC v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009).  By definition then, a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation as of the commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit.  *Id.; See also Meyer v. Fleming*, 327 US 161 (1946)(The claim sought to be enforced in a derivative suit may be an important asset of the estate.); *La. World Exposition v. Fed Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988)(holding that a corporation's "cause of action against its officers and directors…is 'property of the estate'") *Mixon v. Anderson* (*In re Ozark Rest. Equip. Co.*), 816 F.2d 1222, 1225 (8th Cir.1987) (concluding that breach of fiduciary duty is an example of a "cause [ ] of action belonging to the *debtor* at the commencement of the case [that is] included within the definition of property of the estate"); *Delgado Oil Co. v. Torres,* 785 F.2d 857, 861 n. 11 (10th Cir.1986) ("Plaintiff's suit is akin to a shareholder's derivative action which, upon the filing of a petition in bankruptcy, is property of the estate."); *Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984) (holding that the right to prosecute an action against a corporation's officers and directors "pass[es] to the estate created by the commencement of the bankruptcy proceeding").

For the foregoing reasons, the Second MTD as to Count I of the Complaint must be denied.

## B.   The Extinguishment of Intercompany Claims Has No Effect on the Liquidating Trustee's Claims Against Weinshanker.

Weinshanker next argues that any breach of fiduciary duty claims against him that relate to transactions between Hastings and another Debtor (e.g., MovieStop and SPI)

21

cannot be prosecuted.  Specifically, Weinshanker states that because the Plan provided for the substantive consolidation of the five Debtor estates, and for the cancellation and extinguishment of any Intercompany Claims, the *res judicata* effect of the Plan would effectively waive those claims against Weinshanker.

First, Weinshanker ignores the effect of the extinguishment of Intercompany Claims under the Plan and the parties' intent concerning the exstinguishment. Specifically, "Intercompany Claims" is defined in the Plan as "(i) an account reflecting intercompany book entries by one Debtor with respect to any other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor."  Plan, pg. 11.  Tellingly, this definition does not include any Claims held by the Debtors, the Liquidating Trustee, or any other person or entity against a director or officer of any of the Debtors, whether they bear some relation to an Intercompany Claim or not.

Second, the substantive consolidation of the Debtors' estates under the Plan – which is the mechanism by which the Intercompany Claims were extinguished – was intended to be a "deemed" consolidation, rather than a "true" consolidation.  Indeed, the Plan expressly states as such:  "Such deemed consolidation, however, shall not (other than for purposes related to funding Distributions under the Plan) affect (a) the legal and organizational structure of the Debtors."  Plan, Article VII(D).  Clearly, the consolidation contemplated by the Plan did not effectuate an actual merger of the Debtor entities, but rather, treated the assets and liabilities of those entities as combined in order to effectuate equitable Plan distributions to creditors, and to reduce administrative expenses related to the claims reconciliation process.  *Id.*

Third, Weinshanker's position directly contradicts the Plan's express preservation of all Causes of Action against Weinshanker and the other officers and directors of the Debtors, including claims for breach of fiduciary duty that relate to transfers and transactions involving Hastings and the other Debtors.  Specifically, and in addition to the provisions cited above, the Plan states that the following Causes of Action were expressly retained and transferred to the Liquidating Trust:

> The following is a **non-exclusive** list of Retained Causes of Action or Retained Avoidance Actions: (a) all Retained Avoidance Actions, (b) all Retained Avoidance Actions and Retained Causes of Action against Insiders (as that term is defined in section 101(31) of the Bankruptcy Code, including, but not limited to, National Entertainment Collectibles Association and Kidrobot / Beautiful Plastic LLC; and (c) all Retained Causes of Action against any of the Debtors' current or former employees, agents, officers, directors, shareholders, members, managers, including, but not limited to, those causes of action referenced in the Creditors' Committee's October 28, 2016 letter to the Debtors' current and former directors and officers putting them on notice of potential claims.

Plan, Section X(B).

> The Plan further defines Retained Causes of Action as: all Causes of Action and Retained Avoidance Actions **not** (a) purchased by and transferred to any purchaser of the Debtors' Assets pursuant to section 363 of the Bankruptcy Code, including Retained Avoidance Actions and D&O Claims, or (b) released by this Combined Plan and Disclosure Statement, the Plan Supplement, the Plan Confirmation Order, the Final DIP Order, the 363 Sale Order, or any other Final Order of the Bankruptcy Court.

Plan, Section II(A)(108).

> Moreover, the Plan specifically details D&O claims as: Causes of Action against any current or former directors and/or officers of the Debtors, for, *inter alia*, actual fraud, willful misconduct, gross negligence, negligence, breach of fiduciary duty, breach of the duty of care, or breach of the

23

> duty of loyalty, which may be covered under the D&O
> Policies.

Plan, Section II(A)(34).

Notably, the Creditors' Committee's October 28, 2016 letter expressly states that Weinshanker and the other directors and officers were being put on notice as to the precise claims – including breaches of fiduciary duty related to the MovieStop and SPI transactions, and the NECA Transfer (as defined in the Complaint) – set forth in the Complaint. *See Creditors' Committee October 28, 2016 letter*, attached hereto as Exhibit A. Moreover, Weinshanker ignores the Plan's clear and unambiguous intent that "*all*" Retained Causes of Action against Weinshanker would not be given full effect if any Causes of Action stemming from intercompany transactions were deemed waived. Weinshanker and the other officers and directors had the opportunity to object to the Plan's express retention of claims and failed to do so, and as such, Weinshanker's collateral attack on the Plan and the *Findings of Fact, Conclusions of Law, and Order Approving and Confirming Debtors' and the Creditors' Committee's First Amended Joint Combined Disclosure Statement and Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (Case No. 16-11452, Docket No. 1195, the "*Confirmation* Order") should not be sanctioned by this Court.

Fourth, Weinshanker's assertion that the breach of fiduciary duty claims are barred by *res judicata* conflicts directly with the Confirmation Order. To wit:

> The Liquidating Trustee expressly reserves all Retained
> Causes of Action and Retained Avoidance Actions and
> Claims objections, except for any Retained Cause of Action
> and Retained Avoidance Actions against any Person that is
> *expressly* released or waived under the Plan and, therefore,
> no preclusion doctrine, including the doctrines of res
> judicata, collateral estoppel, issue preclusion, claim

24

> preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action or Retained Avoidance Actions upon, after, or as a consequence of confirmation or consummation of the Plan.

Confirmation Order, at ¶ 9 (emphasis added).  Causes of Action against Weinshanker were not expressly waived under the Plan, and in fact, were expressly preserved. Accordingly, the extinguishment of the Intercompany Claims cannot have a preclusive effect on Count I.

Fifth, even if Weinshanker's *res judicata* argument carried any weight (which it does not), a material percentage of the complained-of transfers and transactions in the Complaint – specifically, the NECA Transfer and the Elvis Transfers – involved Weinshanker-owned non-Debtor entities that fall outside of the definition of Intercompany Claims under the Plan.  These transfers and transactions, in which almost $3 million in Hastings cash was squandered, cannot possibly be affected by the deemed substantive consolidation of the Debtors, and at a bare minimum, must survive the Second MTD.

Finally, the Liquidating Trustee must note that Weinshanker's argument belies a fundamental misunderstanding of what a breach of fiduciary duty cause of action entails. Taking Weinshanker's position is true, he suggests that the Court should view a breach of fiduciary duty claim related to an intercompany transfer or transaction as the functional equivalent of an accounts receivable collection, or perhaps a fraudulent transfer claim, and assumes that the transfers and transactions at issue in the Complaint were completely legitimate, such that the appropriate "redress" is simply an accounting entry.   This suggestion is preposterous.

25

A breach of fiduciary duty claim that stems from an affiliate transfer or transaction gives rise to a separate cause of action that is *completely independent* from a cause of action to collect upon or avoid the underlying transfer. *Hechinger Investment Co. of Del. v. Fleet Finance Group*, 274 B.R. 71, 89-91 (D. Del. 2002) (even where insider transfers were insulated from avoidance under section 546(e) of the Bankruptcy Code, directors could still be personally liable for the transfers on a breach of fiduciary duty theory); *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 37 (S.D.N.Y. 2002) (shareholder distribution constituted both a fraudulent transfer and a breach of fiduciary duty against the company's officers and directors). Indeed, the Liquidating Trustee seeks redress for Weinshanker's conduct in orchestrating or permitting self-interested or otherwise improper intercompany transactions and transfers, and the allegations against Weinshanker go much further than the mere act of the transfers having occurred. Count I is not being asserted against the recipients of the subject transfers or participants in the subject transactions, and is thus not intended to seek the avoidance or recovery of those transfers from the recipients.

**C.    The Business Judgment Rule is Not Appropriately Raised in the Second MTD.**

Weinshanker also alleges that his decisions at all times relevant to the Complaint are protected as an exercise of the business judgment rule, and hence, he is shielded from all liability. The business judgment rule, however, is not appropriately raised in the context of this Second MTD, and in any event, does not apply to most of the conduct at issue in the Amended Complaint.

Indeed, the business judgment rule is not generally germane to whether the Liquidating Trustee has stated a claim upon which relief can be granted, but rather, is an

affirmative defense to a claim for breach of fiduciary duty. *In re Tower Air*, 416 F.3d 229, 234 (3d Cir. 2005) ("Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)."); *Miller v. McCown De Leeuw & Co. (In re The Brown Sch.)*, 368 B.R. 394, 401 (Bankr. D. Del. 2007) ("the application of the business judgment rule is an affirmative defense, the determination of which is not proper at the motion to dismiss stage."). Weinshanker is free to assert the business judgment rule in his answer to the Amended Complaint, and undoubtedly, the extent to which the business judgment rule applies to the subject transactions will be subject of future litigation.

Regardless, the Liquidating Trustee repeatedly alleges in the Complaint that the conduct of Weinshanker, which was tainted by conflicts of interest, clouded by self-dealing, and otherwise unreasonable in every way, shape and form, should not be shielded by the business judgment rule. *See, e.g.,* Amended Complaint, ¶ 4 ("these transactions cannot possibly constitute diligent or prudent exercises of business judgment"); ¶ 80 (with respect to the Elvis Exhibition, a seven-figure outlay on a project for which Hastings had no ownership interest was not a "sound exercise of business judgment," "as with the SPI and MovieStop transactions"); ¶ 28 (alleging that the transactions negotiated by Weinshanker "appear to be motivated exclusively by self-interest"); ¶ 29 (alleging that Weinshanker looted Hastings' bank accounts and improperly accessed its Bank of America line to fund other companies he owned); *see also Stanziale v. Nachtomi*, 2004 WL 878469, at *3 (D. Del. Apr. 20, 2004) ("a plaintiff may overcome the presumption of business judgment by alleging self-dealing or pleading with particularity facts showing that the challenged decision was not the result of a valid

27

business judgment"). Because the Liquidating Trustee anticipated, and answered, Weinshanker's attempt to invoke the business judgment rule in his Complaint, a dismissal under Federal Rule 12(b)(6) on such grounds is not appropriate. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (a complaint is susceptible to dismissal under Federal Rule 12(b)(6) only where an unanswered affirmative defense appears on its face).

Moreover, the majority of the transfers and transactions complained of in the Complaint were "interested-director transactions" that are subject to a higher degree of scrutiny under the Texas Business Organizations Code ("*TBOC*") than those transactions subject to the business judgment rule. Specifically, under section 21.418, a transaction between a corporation and "an entity or other organization in which one or more directors or officers, or one or more affiliates or associates of one or more directors or officers, of the corporation: (A) is a managerial official; or (B) has a financial interest," must satisfy one of the following two conditions: (1) the material facts as to the relationship or interest of the officer or director, and the terms of the transaction, must be disclosed to the corporation's board or a committee of the board, and the board or committee must in good faith authorize the transaction by a majority vote; or (2) the transaction is "fair to the corporation" when the transaction is authorized, approved, or ratified by the board of directors or a committee of the board. Tex. Bus. Orgs. Code § 21.418. Where the validity of an "interested-director transaction" is challenged, "the director has the burden of establishing that the transaction is fair to the corporation." *Game Systems, Inc. v. Forbes Hutton Leasing, Inc.*, 2011 WL 2119672, at *5 (Tex. App. May 26, 2011). This

shifting of the burden to the interested director suggests that the presumption of the business judgment rule does not apply to such transactions.

Here, while Weinshanker was the sole Board member of Hastings for the first several months after the Buyout Date, four additional Board members were appointed in November 2014, and many of the transactions and transfers alleged in the Complaint occurred after that date (though it should be noted that there are no known exemptions to section 21.418 of TBOC for a sole-director corporation). As alleged in the Complaint, *none* of the transactions and transfers involving other entities owned or controlled by Weinshanker were brought to any of the disinterested members of the Board for their approval, and to the Liquidating Trustee's knowledge, neither a single Board meeting was held, nor a single Board vote taken, nor a single Board resolution or consent signed, as to any of these transactions (including those occurring prior to the November 2014 expansion of the Board), despite them resulting in the depletion of tens of millions of dollars from Hastings' coffers. Moreover, none of these "interested-director transactions" were "fair" to Hastings, since there was no clear mechanism for Hastings to be repaid on the millions of dollars it transferred to Weinshanker-owned entities, especially since Hastings had no direct ownership stake in those entities. This is particularly the case with respect to the millions of dollars in transfers – specifically, the NECA Transfer and the Elvis Transfers – which went to Weinshanker-owned entities outside of the DAC corporate family.

Delaware similarly recognizes exceptions to the application of the business judgment rule. In particular, Delaware courts have displaced the business judgment rule in favor of an "entire fairness" standard in certain cases, particularly where the company

engages in self-dealing transactions with controlling shareholders, or where a conflicted director "controls or dominates the board as a whole." *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002); *see also Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994).   The Amended Complaint is replete with allegations that Weinshanker engaged in a host of self-dealing transactions involving counterparties under his direct control and ownership, and that even after Hastings' Board expanded to five members, Weinshanker exercised complete dominance over the affairs of Hastings with absolutely no board supervision.

For the foregoing reasons, Weinshanker's invocation of the business judgment rule is insufficient to justify dismissal of Count I of the Complaint, and the Second MTD should be denied.

## II.    The Liquidating Trustee Has Sufficiently Pleaded Count VI Against Weinshanker for Piercing the Veil of DAC.

In Count VI of the Amended Complaint, the Liquidating Trustee seeks to have the veil of DAC, a Delaware limited liability company, pierced.   Weinshanker posits the following arguments in support of dismissal of Count VI:  (i) the fact that Delaware has not, to date, pierced the veil of a limited liability company, and that Delaware courts pierce the corporate veil sparingly; and (ii) the Trustee did not sufficiently plead that Weinshanker committed fraud that would support the piercing of DAC's veil. Weinshanker's arguments contradict both the well-pleaded facts in the Amended Complaint and relevant law.

As a preliminary matter, the Liquidating Trustee addresses Weinshanker's allegation that he seeks to have the corporate forms of all of the Debtors, as well as non-Debtor NECA, disregarded.   The Liquidating Trustee clarifies that he seeks only to have

the veil of DAC – the parent of each of the other Debtors – pierced, and he does not seek, at this time, to have the veils of the other Debtors, NECA, or another of Weinshanker's entities, EAC, pierced.[9]

Turning to the entity for whose veil the Liquidating Trustee is currently seeking to pierce – DAC – the Liquidating Trustee first notes that while Weinshanker is correct that there are no reported *Delaware* decisions in which a Delaware limited liability company has had its veil pierced, this does not equate to a *prohibition* against piercing the veil. Indeed, Delaware courts examining this issue acknowledge the lack of such a prohibition, and opine that as a conceptual matter, piercing the veil of a LLC may be appropriate in particular circumstances, and that alter ego theories are applicable to LLCs as well as corporations. *See, e.g.*, *Trustees of Village of Arden v. Unity Construction Co.*, 2000 Del. Ch. LEXIS 7, at *12 (Jan. 26, 2000); *Pepsi-Cola Metropolitan Bottling Company of Salisbury, Maryland v. Handy*, 2000 Del. Ch. LEXIS 52, at *11-12 (Mar. 15, 2000) (holding that a Delaware LLC will not insulate an individual for misconduct); *Somerville S Trust v. USV Partners, LLC*, 2002 WL 1832830, at *7 (Del. Ch. Aug. 2, 2002) (holding that a LLC was the alter ego of its members). In the *Unity Construction* case in particular, the court referred to corporate veil piercing cases, suggesting that certain principals of corporate piercing could be applied in a LLC piercing case.

Weinshanker also conveniently neglects to mention that several courts outside of Delaware have authorized or affirmed the piercing of a Delaware LLC's veil. In *Soroof Trading Development Co. Ltd. v. GE Fuel Cell Systems LLC*, 842 F.Supp.2d 502

---

[9]   The Liquidating Trustee reserves the right to seek to pierce the veil of other Weinshanker-owned entities to the extent deemed necessary in the context of a post-judgment enforcement proceeding.

(S.D.N.Y. 2012), the United States District Court for the Southern District of New York granted summary judgment to the plaintiff and allowed piercing of the veil of a Delaware LLC, and did so on an alter ego basis.  While acknowledging that less emphasis should be placed on LLC formalities than on corporate formalities, the court employed an alter ego analysis similar to that which would typically be employed in a corporate veil piercing case, examining such factors as capitalization, solvency, adequate records, and siphoning of funds.  *Id.* at 521.  In piercing the veil of the defendant LLC, the court held that the extensive commingling of operations of the LLC and its members, the lack of cash assets, employees, and office space, and other evidence that the defendant LLC was a mere instrumentality or alter ego of the members, supported such a result.  *Id.* at 522.

And in *Curci Investments, LLC v. Baldwin*, 14 Cal.App.5th 214 (2017), the California Court of Appeals held that reverse veil piercing of a Delaware LLC (i.e., piercing a member of a LLC to access the LLC's assets) was a remedy available to the plaintiff.  The court did not, however, decide whether the veil in this particular case would be pierced, instead remanding to the trial court to employ a fact-based alter ego analysis.  *Id.* at 224.

Since there is no direct prohibition on the piercing of a LLC's veil under Delaware law, and since courts applying Delaware law have either pierced or have indicated that a LLC's veil is susceptible to being pierced, Weinshanker cannot argue that Count VI should be dismissed as a matter of law.

Assuming that a cause of action for piercing DAC's veil can properly be asserted by the Liquidating Trustee, the Liquidating Trustee has more than sufficiently pleaded such claim for purposes of Federal Rule 12(b)(6).  In attacking the sufficiency of Count

32

VI, Weinshanker focuses on the Liquidating Trustee's lack of factual allegations regarding fraud committed by Weinshanker.  The paucity of such allegations was intended, however, because not only is the Liquidating Trustee not asserting that Weinshanker committed fraud, but because Delaware recognizes a variety of grounds other than fraud for piercing a corporate veil.

Indeed, in determining whether to pierce a veil of a corporation under Delaware law, courts, have looked to a variety of factors (each of which was pleaded in the Complaint), including "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder."  *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010) (citation omitted).  The decision to pierce the veil "generally results not from a single factor, but rather some combination of them, and 'an overall element of injustice or unfairness must always be present, as well.'"  *Id.* (quoting *EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008).  "To prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness."  *NetJets Aviation, Inc. v. LHC Commc'ns LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (reviewing Delaware law).

The exercise of domination and control over the corporation has also been cited as a justification for piercing the corporate veil.  *Wallace ex rel. Cencom Cable Income Partners II, Inc. L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) ("In order to

state a cognizable claim to pierce the corporate veil of the General Partner, plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the General Partner.").   The degree of control required to pierce the veil is "exclusive domination and control ... to the point that [the General Partner] no longer ha[s] legal or independent significance of [its] own." *Id.*

The Amended Complaint sets forth in detail a host of factual allegations that amply establish the plausibility of piercing the veil of DAC under an alter-ego theory. Specifically, the Complaint alleges that: (a) Weinshanker unilaterally exercised dominion over DAC, and by extension, each of the companies in the DAC corporate family; (b) that Weinshanker unilaterally made decisions for DAC, the Debtor-subsidiaries (including Hastings), and carried out those decisions either individually or through his surrogates at NECA; (c) that corporate formalities were completely ignored; that Weinshanker's conduct caused Hastings' capitalization to be completely squandered; (d) and that the entities Weinshanker (through DAC) purchased with Hastings' money were heavily distressed and illiquid at, and after, the acquisition date. *See, e.g.,* Complaint, ¶29 (alleging Weinshanker's complete dominion over Hastings); ¶50 (alleging lack of formalities related to MovieStop acquisition); ¶53 (alleging that SPI was heavily distressed and suffering from liquidity constraints at the time of acquisition); 67 (alleging squandering of Hastings' availability on Bank of America revolver); 68 (alleging persistent liquidity shortfalls at SPI in August 2015); ¶69 (alleging lack of formalities related to SPI acquisition); ¶80 (alleging severe financial distress of Hastings at time of Elvis Exhibition); ¶85 (alleging insolvency of Hastings in December 2014, at time of Pathlight Paydown); ¶87 (alleging lack of formalities related to Pathlight Paydown); ¶174

(alleging lack of adequate capitalization); ¶177 (alleging insolvency of the Debtors); ¶165 (alleging absence of corporate formalities).

To suggest the Liquidating Trustee's allegations in support of the piercing of DAC's veil were merely conclusory ignores the host of well-pleaded facts in the Amended Complaint.   The Amended Complaint alleges rampant self-dealing by Weinshanker and a pervasive lack of corporate formalities related to material corporate transactions involving DAC, its subsidiaries, and other entities owned by Weinshanker. The Amended Complaint also alleges that DAC was a mere instrumentality through which funds were cycled to Weinshanker's other entities, including NECA.   These allegations make plausible the entitlement of the Liquidating Trustee to have the veil of DAC pierced, and accordingly, the Second MTD as to Count VI should be denied.

III.    **While Count VII is Derivative of Counts I and VI, Since Counts I and VI Should Survive the Second MTD, So Should Count VII.**

Finally, Weinshanker moves for the dismissal of Count VII because it is derivative of Counts I and VI, which he also seeks to dismiss.  Accepting Weinshanker's logic as true, it follows that so long as either or both of Count I and VI survive the Second MTD, so should Count VII.  Since the Liquidating Trustee has established that Counts I and VI are sufficiently pleaded, the Second MTD as to Count VII must be denied.

WHEREFORE, Plaintiff Curtis R. Smith, Liquidating Trustee, respectfully requests that this Court deny the Second MTD.

Dated:  August 13, 2018

Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, Delaware 19809
Telephone:  302.444.6710
Facsimile:   302.444.6709
e-mail: marias@goldmclaw.com

and

Thomas R. Fawkes, Esq.
Brian J. Jackiw, Esq.
GOLDSTEIN & MCCLINTOCK LLLP
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone:  312.337.7700
Facsimile:   312.277.2305
e-mail:     tomf@goldmclaw.com
            brianj@goldmclaw.com

*Special Litigation Counsel to Curtis R. Smith, Solely as Trustee of the Hastings Creditors' Liquidating Trust*