## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DRAW ANOTHER CIRCLE, LLC,[1] *et al.,* | ) | |
| | ) | Case No. 16-11452 (KJC) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| CURTIS R. SMITH, LIQUIDATING TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOEL WEINSHANKER, ALAN VAN ONGEVALLE, CATHY HERSHCOPF, FRANK MARRS, and JEFFREY SHRADER, | ) | Adversary Proceeding Case No. 17-51041 (KJC) |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |
| | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE TO DEFENDANTS ALAN VAN ONGEVALLE, CATHY HERSHCOPF, FRANK MARRS, AND JEFFREY SHRADER'S <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**GOLDSTEIN & MCCLINTOCK LLLP**
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, Delaware 19809
Telephone:  302.444.6710
Facsimile:  302.444.6709
e-mail: marias@goldmclaw.com

August 13, 2018

Thomas R. Fawkes, Esq.
Brian J. Jackiw, Esq.
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone:  312.337.7700
Facsimile:  312.277.2305
e-mail:  tomf@goldmclaw.com
          brianj@goldmclaw.com

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Draw Another Circle, LLC (2102); Hastings Entertainment, Inc. (6375); MovieStop, LLC (9645); SP Images, Inc. (7773); and Hastings Internet, Inc. (0809). Under the confirmed *First Amended Joint Combined Disclosure Statement and Plan of Liquidation* (Case No. 16-11452, Docket No. 1076, the "*Plan*"), all of the Debtors' bankruptcy cases aside from that of Draw Another Circle, LLC have been closed in the Bankruptcy Court.  Undefined terms capitalized herein shall have the meanings ascribed to them in the Complaint.

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................... **1**

**LEGAL STANDARD** ..................................................................... **4**

**ARGUMENT** ..................................................................... **6**

**I. The Liquidating Trustee Has Standing to Bring Claims for Breach of Fiduciary Duty on Behalf of Hastings' Creditors** ............................................. **6**

    A. The Ceasing of Business Operations is Not a Prerequisite for Fiduciary Duties to Extend to Creditors. ..................................................................... **6**

    B. The Liquidating Trustee Has Sufficiently Pleaded Hastings' Insolvency At All Times Relevant to this Complaint. ..................................................................... **8**

    C. The Liquidating Trustee Has Standing to Pursue Breach of Fiduciary Duty Claims Against the Non-Weinshanker Defendants, Irrespective of Hastings' Solvency or Insolvency. ..................................................................... **15**

**II. The Liquidating Trustee Alleges Substantial Injury to Hastings and its Creditors Resulting From The Defendants' Breaches of Fiduciary Duty; and Whether the Non-Weinshanker Defendants Obtained a Benefit is Irrelevant.** ..................................................................... **19**

**III. Under Texas Law, a Director's Abdication of Duty Constitutes a Breach of the Duty of Loyalty.** ..................................................................... **22**

**IV. The Liquidating Trustee States a Claim for Aiding and Abetting Breaches of Fiduciary Duty, and Accordingly, the Non-Weinshanker Defendants' Motion to Dismiss Counts IV and V Must Be Denied.** ..................................................................... **28**

    A. Weinshanker Breached His Fiduciary Duties to Hastings and Its Creditors. . **28**

    B. Notwithstanding the Non-Weinshanker Defendants' Independent Fiduciary Duties to Hastings and Its Creditors, They Can Still be Held Liable for Aiding and Abetting Weinshanker's Breaches of Fiduciary Duty ............................. **29**

    C. The Liquidating Trustee Sufficiently Alleges "Knowing Participation." ....... **32**

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 561 (D. Del. 2008) .............................................................. 25

*Ashcroft* v. *Iqbal,* 556 U.S. 662, 678-79 (2009) ................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ................................... 5, 6

*Brickley for CryptoMetrics, Inc. Creditor's Trust v. ScanTech Identification Beams Systems, LLC,* 566 B.R. 815, 848 (W.D. Tex. 2017) ...................................... 38

*Carrieri v. Jobs.com,* 393 F.3d 508, 534, n. 24 (5th Cir. 2004) ..................................... 8, 9

*Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 290 (Bankr. D. Del. 2006).......................................................................................................... 19

*Cochran v. Stifel Financial Corp.*, 2000 WL 286722 (Del. Ch. 2000) ........................... 19

*Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281, 284-85 (Bankr. D. Ariz. 2007) ......................................................................... 18

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 793 (3rd Cir. 2016)................................. 6

*Darocy v. Abildtrup*, 345 S.W.3d 129, 137-38 (Tex. App. – Dallas 2011) ..................... 33

*Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) .......................... 25

*Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex. Civ. App. 1973).................... 7

*FDIC v. Benson*, 867 F.Supp. 512 (S.D. Tex. 1994) ....................................................... 30

*FDIC v. Brown*, 812 F.Supp. 722 (S.D. Tex. 1992) ....................................................... 30

*FDIC v. Daniel*, 158 F.R.D. 101 (E.D. Tex. 1994)......................................................... 30

*FDIC v. Harrington*, 844 F.Supp. 300 (N.D. Tex. 1994) ............................................... 30

*FDIC v. Schreiner*, 892 F.Supp. 869 (S.D. Tex. 1995) .................................................. 29

*First Am. Corp. v. Al-Nahyan*, 17 F. Supp.2d 10, 26 (D.D.C. 1998)............................. 18

*Fitzgerald v. Antoine Nat'l Bank*, 980 S.W.2d 228 (Tex. Ct. App. – Houston 1998) ...... 24

*Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 721 (5th Cir. 1984).............. 18

*Grubin v. Rattet (In re Food Mgmt. Group, LLC),* 380 B.R. 677, 703 (Bankr. S.D.N.Y. 2008).................................................................................................................... 38

*Heit v. Weitzen,* 402 F.2d 909, 914 (2nd Cir. 1968) .......................................................... 38

*Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex. App. 1998, pet. denied) ................. 34

*In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, (Bankr. N.D. Tex. 2003)............ 8

*In re Central Illinois Energy Cooperative*, 561 B.R. 699, 714-15 (Bankr. C.D. Ill. 2016) ............................................................................................................................... 10

*In re I.G. Servs. Ltd.*, 2007 WL 2229650, at *3 (Bankr. W.D. Tex. July 31, 2007)....... 8, 9

*In re Life Partners Holdings, Inc. Shareholder Derivative Litigation*, 2015 WL 8523103, at *10 (W.D. Tex. 2015) ............................................................................................. 28

*In re Supplement Spot, LLC*, 409 B.R. 187, 203 (Bankr. S.D. Tex. 2009)........................ 8

*In re The Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007) .............................. 25

*In re Tower Air, Inc.*, 416 F.3d 229, 242 (3d Cir. 2005) .................................................. 25

*In re Vartec Telecom, Inc.*, 2007 WL 2872283, at *2 (Bankr. N.D. Tex. Sept. 24, 2007) 8, 9

*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006)............................ 29

*Indus. Enters. Of Am., Inc. v. Tabor Academy (In re Pitt Penn Holding Co.)*, 2011 WL 4352373, at *3 (Bankr. D. Del. Sept. 16, 2011).................................................... 4, 5, 6

*Joseph v. Frank (In re Troll Commc'ns, LLC),* 385 B.R. 110, 123-24 (Bankr. D. Del. 2008)............................................................................................................................. 11

*Kastner v. Jenkins & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App. – Dallas 2007).. 34

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942) ................................................................................................................................... 33

*Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014) ........................................................................... 13, 21

*Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000) ............................................................. 5

*North American Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) ...................................................................................................... 21

*NTR Bullion Group, LLC v. Liberty Metals Group, LLC,* 2014 WL 1516311, *3 (N.D. Tex. April 18, 2014).................................................................................................... 38

*Official Comm. Of Unsecured Creditors v. The CIT Group/Business Credit, Inc., (In re Jevic Holdings Corp.),* 2011 WL 4345204 at *9, (Bankr. D. Del. Sept. 15, 2011) ...... 11

*Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),* 326 B.R. 301, 306–07 (Bankr. D. Del. 2005) ................................................................. 11

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) ...................................... 6

*Plas-Tex, Inc. v. Jones,* 2000 Tex. App. LEXIS 3188, at *15 (Tex. Ct. App. May 18, 2000) ................................................................................................................ 7, 9

*Reardon v. Lightpath Technologies, Inc.,* 183 S.W.3d 429 (Tex. Ct. App. – Houston 2005) ...................................................................................................................... 23

*Resolution Trust Corp. v. Norris,* 830 F.Supp. 351 (S.D. Tex. 1993) ............................. 30

*Ritchie v. Rupe,* 443 S.W.3d 856, 869 (Tex. 2014) ........................................................ 18

*RTC v. Acton,* 822 F.Supp. 307 (N.D. Tex. 1994) ........................................................... 30

*RTC v. Bonner,* 1993 WL 414679 (S.D. Tex. 1993) ....................................................... 30

*Sargent v. Genesco, Inc.,* 492 F.2d 750, 761 (5th Cir. 1974) .......................................... 37

*See In re Autobacs Strauss, Inc.,* 473 B.R. 525, 554-55 (Bankr. D. Del. 2012) .............. 10

*Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.),* 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003) ........................................................... 11

*Sneed v. Webre,* 465 S.W.3d 169, 178 (Tex. 2015) ........................................................ 29

*Sw. Tex. Pathology Assocs., L.L.P. v. Roosth,* 27 S.W.3d 204, 208 (Tex. App. 2000) .... 34

*Torch Liquidating Trust v. Stockstill,* 561 F.3d 377 (5th Cir. 2009) ............................... 17

*Tow v. Bulman,* 2016 WL 1722246, at *14 (E.D. La. Apr. 29, 2016) ............................. 29

*Triton Constr. Co. v. E. Shore Elec. Servs., Inc.,* 2009 WL 1387115, at *16 (Del. Ch. May 18, 2009), *aff'd,* 988 A.2d 938 (Del. 2010) ......................................... 33

*U.S. Bank Nat. Ass'n v. Verizon Comm Inc.,* 817 F. Supp. 2d 934, 943 (N.D. Tex. 2011) .................................................................................................................. 11

*U.S. Bank Nat'l Assn. v. Stanley,* 297 S.W.3d 815 (Tex. Ct. App. – Houston 2009) ....... 23

*Weaver v. Kellogg,* 216 B.R. 563, 583-84 (S.D. Tex. 1997) ................................... 7, 9, 28

*Wooley v. Lucksinger,* 61 So.3d 507, 590-92 (La. 2011) .......................................... 18, 19

**Statutes**

Tex. Bus. Orgs. Code § 7.001(c)(1)....................................................................... 23

Now comes Plaintiff Curtis R. Smith, Liquidating Trustee (the "*Liquidating Trustee*"), by his special litigation counsel, Goldstein & McClintock LLLP, and for his Memorandum of Law in Support of His Response (the "*Response*") to Defendants Alan Van Ongevalle, Cathy Hershcopf, Frank Marrs, and Jeffrey Shrader's Opening Brief in Support of Their Motion to Dismiss the Amended Complaint [Docket No. 32], states as follows:

<u>**PRELIMINARY STATEMENT**</u>

On August 31, 2017, the Liquidating Trustee filed his initial complaint against defendants Joel Weinshanker ("*Weinshanker*"), Alan Van Ongevalle ("*Van Ongevalle*"), Cathy Hershcopf ("*Hershcopf*"), Frank Marrs ("*Marrs*"), and Jeffrey Shrader ("*Shrader*", and with Weinshanker, Van Ongevalle, Hershcopf, and Marrs, the "*Defendants*"). Among other things, the Complaint alleges breaches of fiduciary duties of the Defendants against Debtor Hastings Entertainment, Inc. ("*Hastings*") and its creditors, aiding and abetting breaches of fiduciary duties, and piercing the corporate veil.  The Liquidating Trustee alleges that the Defendants' conduct has caused the Debtors' estates and creditors at least $30 million in damages.

After several months of informal discussions between the Liquidating Trustee and Van Ongevalle, Hershcopf, Marrs and Shrader (collectively, the "*Non-Weinshanker Defendants*"), the parties (including Weinshanker) attempted to resolve their disputes through a non-binding mediation.  A mediation session took place in April 2018 but was unsuccessful.  Subsequently, the parties agreed to a briefing schedule that would permit the Liquidating Trustee to file an amended complaint to address the concerns raised by the Defendants at the mediation (despite the Liquidating Trustee's view that none of

those concerns were sufficient to warrant dismissal of the original complaint), and the Liquidating Trustee did so on June 7, 2018 (Docket No. 24, the "*Amended Complaint*").

Notwithstanding the fact that each and every concern raised by the Defendants at the mediation was more than adequately addressed through the Amended Complaint, the Non-Weinshanker Defendants still nevertheless assert, through their *Motion to Dismiss the Amended Complaint* (the "*Motion to Dismiss*") that the Liquidating Trustee's claims fail under Fed. R. Civ. P. 12(b)(6), made applicable hereto under Fed. R. Bankr. P. 7012. As demonstrated by the Liquidating Trustee in this Response, each of the Non-Weinshanker Defendants' arguments in support of dismissal represent a misunderstanding (if not a mischaracterization) of the law applicable to this action and ignore the well-pleaded factual allegations set forth in the Amended Complaint.

As an initial matter, Counts II and III are well-pleaded under applicable state law. The Liquidating Trustee's standing to pursue claims on behalf of Hastings' creditors is abundantly clear, based on his more than sufficient allegations that Hastings became insolvent on, or shortly after, Weinshanker purchased Hastings through a leveraged buyout in July 2014 (the "*Buyout*").  The notion that Hastings and its creditors did not suffer injury as a result of the acts and omissions of Weinshanker and the Non-Weinshanker Defendants is ridiculous, and the Amended Complaint is replete with detailed factual allegations supporting damages caused by the Defendants to the tune of approximately $30 million.

Similarly unpersuasive is the notion, advanced by the Non-Weinshanker Defendants, that their complete lack of oversight of Hastings (and of Weinshanker) is protected under the Texas business judgment rule and a director exculpation provision

contained in Hastings' corporate governance documents.  Instead, the law in Texas (the state of incorporation of Hastings) could not be more clear:  a failure to exercise proper oversight over a corporate enterprise – and in this case, no oversight – constitutes a breach of the duty of loyalty, which is neither protected under the business judgment rule nor the exculpation provision included in Hastings' Third Amended and Restated Certificate of Incorporation (the "*Certificate*") (and in any event, Van Ongevalle's actions taken as an officer of Hastings are not protected by the plain language of the exculpation).  The Liquidating Trustee's allegations concerning the Non-Weinshanker Defendants' stunning lack of oversight are extensive, and more than sufficient to pass muster under Fed. R. Civ. P. 12(b)(6).  Among other things, the Amended Complaint alleges that the Non-Weinshanker Defendants:  (i) never held a board meeting; and (ii) never undertook a review of any of the costly transactions that Weinshanker caused Hastings to consummate.  Texas law cannot be clearer:  when a board of directors fails to exercise oversight or supervision over a corporation, that failure is a breach of the duty of loyalty.

Also unpersuasive is the assertion that the Non-Weinshanker Defendants cannot be held liable for aiding and abetting Weinshanker's breaches of fiduciary duty because they too were fiduciaries of Hastings, and because Weinshanker did not breach his fiduciary duties to Hastings and its creditors.  First, there is no prohibition under Texas law (unlike in Delaware) for a fiduciary to be held liable for aiding and abetting a fellow fiduciary's breaches of fiduciary duties.  Second, in support of Weinshanker's breaches of fiduciary duties, the Liquidating Trustee has alleged in substantial detail that Weinshanker spearheaded multiple indisputably ill-advised transactions that resulted in

3

Hastings transferring tens of millions of dollars of Hastings' cash and property to entities under his ownership and control (and without any consideration in return or prospect of repayment), and completely depleting Hastings' borrowing ability under its secured line of credit.  Weinshanker did so while Hastings was insolvent.  Furthermore, each of these transactions occurred with the knowledge and assistance of the Non-Weinshanker Defendants, in their capacities as officers (in the case of Van Ongevalle) or outside attorneys (in the case of Hershcopf and Shrader); it is absurd to pretend that the Non-Weinshanker Defendants were not keenly aware of the extensive damage that Weinshanker was visiting upon Hastings for his benefit.  Finally, even if the Non-Weinshanker Defendants were correct in asserting that they could not be liable for aiding and abetting while themselves fiduciaries (which they are not), they conveniently ignore the fact that at least one of them – Hershcopf – was deeply involved in several of Weinshanker's key transactions *before* she became a director in her capacity as counsel to Weinshanker (and thus, not a fiduciary of Hastings).

As further discussed below, the Amended Complaint easily satisfies applicable pleading standards, and accordingly, the Motion to Dismiss must be denied in its entirety.

## LEGAL STANDARD

The purpose of a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "*Federal Rules*"), made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), is to test the sufficiency of a complaint's factual allegations.  *Indus. Enters. Of Am., Inc. v. Tabor Academy (In re Pitt Penn Holding Co.)*, 2011 WL 4352373, at *3 (Bankr. D. Del. Sept. 16, 2011).  "The court must assume the veracity of the factual allegations set forth

4

in the complaint, draw all reasonable references from the facts alleged, and construe all allegations in the light most favorable to the plaintiff." *Id*. at *4 (citing *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678-79 (2009)). Moreover, "[t]he credibility of the facts alleged by the plaintiff are not at issue in a motion to dismiss because 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Supreme Court has explained that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely," so long as there are "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556.

The issue is not "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). Federal Rule 8 "does not impose a probability requirement at the pleading stage; but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556); *see also Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 793 (3rd Cir. 2016) (citations omitted) (vacating dismissal of complaint: "even if one believed it 'unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits,' it must still be said that [plaintiff] – under a favorable standard of review – has raised a reasonable inference that  discovery will reveal evidence of the elements necessary to establish the claims."); *Pitt Penn,* 2011 WL 4352373, at *4 n. 6 (citation omitted) ("a

complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove [the facts alleged] or will ultimately prevail on the merits.").

While the Non-Weinshanker Defendants purport to rely upon essentially the same standards as those articulated by the Liquidating Trustee, it is clear that their Motion to Dismiss asks the Court to employ a far more stringent pleading standard in reviewing the sufficiency of the Amended Complaint.  Indeed, the Non-Weinshanker Defendants would have this Court believe that the Liquidating Trustee, in its initial pleading, must conclusively prove each of his claims against the Non-Weinshanker Defendants. However, plausibility, and not proof, is what the Liquidating Trustee must demonstrate. He has more than adequately established plausible claims against the Non-Weinshanker Defendants in each count of the Amended Complaint that apply to them, and accordingly, the Motion to Dismiss should be denied.

## ARGUMENT

**I.**   **The Liquidating Trustee Has Standing to Bring Claims for Breach of Fiduciary Duty on Behalf of Hastings' Creditors**

      A.   The Ceasing of Business Operations is Not a Prerequisite for Fiduciary Duties to Extend to Creditors.

The Non-Weinshanker Defendants first argue that there is "ample" Texas authority for the proposition that insolvency alone is not sufficient to establish a fiduciary relationship between corporate officers and directors and creditors.  Instead, they argue that duties do not shift until a business completely ceases to operate.  They then go on to cite a single decision, *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex. Civ. App. 1973) in support of this outlier proposition.

In so arguing, the Non-Weinshanker Defendants ignore the extensive Texas precedent reaching the exact opposite conclusion:  Texas, like virtually every other state in the country, recognizes that fiduciary duties shift to creditors upon a corporation's insolvency (if not sooner).  The overwhelming weight of decisions under Texas law, all of which post-date the *Fagan* case cited by the Non-Weinshanker Defendants, support this conclusion.  *Plas-Tex, Inc. v. Jones*, 2000 Tex. App. LEXIS 3188, at *15 (Tex. Ct. App. May 18, 2000) (directors of Texas corporations, however, owe fiduciary duties to creditors even prior to an insolvency, so long as "prejudice to the creditors" exists); *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997) ("it appears under . . . Texas law, corporate insiders . . . may have a fiduciary duty to the corporation's creditors *even when the corporation was not insolvent*.  The Court holds that Plaintiff may therefore prevail on his breach of corporate duty claims if he shows . . . that [the debtor] was, at the time, in 'the vicinity of insolvency,' . . ., that the transaction lead to [the debtor's] insolvency; or that the transaction was a fraudulent conveyance") (emphasis added; internal citations omitted); *Carrieri v. Jobs.com,* 393 F.3d 508, 534, n. 24 (5th Cir. 2004) ("[o]fficers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' . . . have expanded fiduciary duties to include the creditors of the corporation."); *Weaver*, 216 B.R. at 582-84 (directors owe fiduciary duties to creditors when corporation is "in the vicinity of insolvency"); *In re I.G. Servs. Ltd.*, 2007 WL 2229650, at *3 (Bankr. W.D. Tex. July 31, 2007) (creditors can sue for breach of fiduciary duty when corporation is "zone of insolvency"); *In re Vartec Telecom, Inc.*, 2007 WL 2872283, at *2 (Bankr. N.D. Tex. Sept. 24, 2007) (same); *In re Supplement Spot, LLC*, 409 B.R. 187, 203 (Bankr. S.D. Tex. 2009) ("under Texas law, corporate

officers . . . have fiduciary duties to creditors when the corporation is insolvent"); *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, (Bankr. N.D. Tex. 2003) ("When a corporation enters a zone of insolvency, the fiduciary duty shifts from the shareholders to the creditors of the corporation"; court held those duties to shift even while the debtor was still operating).

It goes without saying that if fiduciary duties can and undoubtedly do shift to creditors under Texas law even when a corporation has not become insolvent, the requirement that the corporation cease business operations as a precondition to shifting duties cannot be the law of the state.

> B.     The Liquidating Trustee Has Sufficiently Pleaded Hastings'
>        <u>Insolvency At All Times Relevant to this Complaint.</u>

The Non-Weinshanker Defendants assert that the Liquidating Trustee's allegations concerning Hastings' insolvency are inadequate, thereby requiring dismissal of Counts II and III of the Complaint.  The Liquidating Trustee completely disagrees.

As discussed above, directors of Texas corporations, owe fiduciary duties to creditors upon, and even prior to, an insolvency, so long as "prejudice to the creditors" exists. *Plas-Tex, Inc.*, 2000 Tex. App. LEXIS 3188, at \*15.  Prejudice to creditors occurs when "the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Weaver*, 216 B.R. at 583-84.  Moreover, "[o]fficers and directors that are aware that the corporation is insolvent, or within the 'zone of insolvency' . . . have expanded fiduciary duties to include the creditors of the corporation." *Carrieri,* 393 F.3d at 534 n. 24 (5th Cir. 2004); *see also Weaver*, 216 B.R. at 582-84 (directors owe fiduciary duties to creditors when corporation is "in the vicinity of insolvency"); *In re I.G. Servs. Ltd.*, 2007 WL 2229650, at \*3 (Bankr. W.D. Tex. July 31, 2007) (creditors can sue for

breach of fiduciary duty when corporation is "zone of insolvency"); *In re Vartec Telecom, Inc.*, 2007 WL 2872283, at *2 (Bankr. N.D. Tex. Sept. 24, 2007) (same).

While the relevant moment in time when duties shifted to creditors is not when Hastings became insolvent, but rather, when the Defendants' misconduct started causing "prejudice to creditors" or when Hastings entered the "zone of insolvency," the Liquidating Trustee has sufficiently pleaded facts that demonstrate Hastings was insolvent *no later than July 28, 2014.* And contrary to the Non-Weinshanker Defendants' suggestion, such insolvency-related allegations need not be pleaded with specificity. *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 554-55 (Bankr. D. Del. 2012) (broad allegations of insolvency sufficient for purposes of Federal Rule 12(b)(6)). This makes sense because insolvency is often a complex factual issue. As one court explained:

> In light of the difficulty of establishing exactly when insolvency occurred, which is usually a matter of expert opinion, it would make no sense at the pleading stage to require a plaintiff to separate [counts for pre- and post-insolvency breach of fiduciary duties] based upon a supposition about the timing of the entity's insolvency. The First Amended Complaint puts Smith on notice that the Trustee is asserting a breach of fiduciary duty for pre-insolvency and post-insolvency conduct. That is all that is required at this stage.

*In re Central Illinois Energy Cooperative*, 561 B.R. 699, 714-15 (Bankr. C.D. Ill. 2016). Indeed, virtually all of the Defendants' violative conduct took place *after* Hastings was insolvent.

In order to allege insolvency sufficient to withstand a motion to dismiss, the Plaintiff need only allege facts to make it plausible that the debtor was insolvent at the time of the subject transactions. *U.S. Bank Nat. Ass'n v. Verizon Comm Inc.*, 817 F.

Supp. 2d 934, 943 (N.D. Tex. 2011) (finding allegation of balance sheet insolvency was sufficient to state a plausible claim for breach of fiduciary duty); *see also Official Comm. Of Unsecured Creditors v. The CIT Group/Business Credit, Inc., (In re Jevic Holdings Corp.),* 2011 WL 4345204 at *9, (Bankr. D. Del. Sept. 15, 2011) (finding allegation that debtor was insolvent or would have been rendered insolvent by the subject transactions were sufficient to survive motion to dismiss); *Joseph v. Frank (In re Troll Commc'ns, LLC),* 385 B.R. 110, 123-24 (Bankr. D. Del. 2008) (finding insolvency allegations were sufficient to withstand a motion to dismiss where the complaint alleged facts demonstrating debtors' liabilities exceeded their assets during the year before bankruptcy); *Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),* 326 B.R. 301, 306–07 (Bankr. D. Del. 2005) (deciding that allegations that a debtor was undercapitalized from its inception and did not have sufficient assets to at the time of the challenged transfers in order to satisfy obligations sufficiently alleged insolvency); *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.),* 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003) (concluding that general allegations of insolvency adequately gave fair notice to a defendant of the existence of that element of a fraudulent transfer claim).

Against that background, the Liquidating Trustee's allegations readily give rise to a reasonable inference that all of Weinshanker's misconduct prejudiced creditors and most, if not all, occurred after Hastings was insolvent, and after Hastings was in the "zone of insolvency." Among other things, the Liquidating Trustee alleged:

- Hastings was in "severe financial distress" in mid- to late 2015, during the time in which Weinshanker directed the Elvis Transfers (Amended Complaint, ¶¶ 76 and 80);

- Hastings was insolvent and illiquid as of December 2014, when the Pathlight Paydown was made (Amended Complaint, ¶ 85);

- "…Hastings' insolvency, which increased significantly from the Buyout Date to the Petition Date." (Amended Complaint, ¶95);

- "All or substantially all of the acts and omissions of Weinshanker and the non-Weinshanker Defendants occurred while Hastings was clearly insolvent on a balance sheet basis." (Amended Complaint, ¶96);

- "As an initial matter, Hastings' insolvency was propelled by the Weinshanker-led leveraged buyout, which added $15 million of secured debt to the company's books.  As a result, Hastings was insolvent by no later than July 28, 2014 (if not as of the Buyout Date itself)." (Amended Complaint, ¶97)

- "Hastings was not adequately capitalized to absorb the burdens of" the transactions described in the Complaint (Amended Complaint, ¶ 174);

- "DAC and its subsidiaries, including Hastings, were insolvent, or became insolvent, during the period relevant to this Complaint" (Amended Complaint, ¶ 177).

The Liquidating Trustee also alleges, on multiple occasions, that Weinshanker's conduct, and the Non-Weinshanker Defendants' omissions, virtually completely constrained Hastings' ability to borrow on the Bank of America revolving credit line to be almost entirely curtailed, which can be inferred as a further indicator of Hastings' insolvency (in

that borrowing ability is a critical component of both funding inventory purchases and satisfying trade liabilities).  Amended Complaint, ¶ 45 (Hastings' availability projected to fall to $15 million in December 2014, only five months after the Buyout Date, at which time it had $60 million of availability); ¶ 67 (after NECA Transfer, Hastings only had $13 million of availability on the revolver).

The Non-Weinshanker Defendants also assert that the pleading standard articulated by this Court in *Lightsway Litigation Services, LLC v. Yung (In re Tropicana Entertainment, LLC)*, 520 B.R. 455 (Bankr. D. Del. 2014) should control.  The Non-Weinshanker Defendants rely on a statement in *Lightsway* which suggests that the only way of meeting the burden of sufficiently pleading insolvency is pleading facts which show the debtor has a (1) deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued; or (2) an inability to meet maturing obligations as they fall due in the ordinary course of business.

The Liquidating Trustee's allegations regarding insolvency, however, easily meet the burden established by *Lightsway*.  Specifically, and in addition to the foregoing allegations, the Liquidation Trustee alleges:

- "As a result, Hastings was insolvent by no later than July 28, 2014 (if not as of the Buyout Date itself)." (Amended Complaint, ¶97); and

- "Hastings was clearly insolvent on a balance sheet basis." (Amended Complaint, ¶96).

These statements include specificity of date and method of determining insolvency (on a balance sheet basis).  While the Non-Weinshanker Defendants would have this Court believe that a heightened pleading standard should apply, it simply does not.

Moreover, at the April 2018 mediation, the Liquidating Trustee provided both Weinshanker and the non-Weinshanker Defendants a draft copy of the insolvency analysis prepared by BDO USA LLC ("*BDO*"), the Liquidating Trustee's financial advisor. This clearly put the Non-Weinshanker Defendants on notice of the specific facts underlying how and why the Liquidating Trustee has determined insolvency, and the extent to which Hastings was insolvent during several periods relevant to the Amended Complaint.

The entire thrust of the Amended Complaint is that Weinshanker's control and domination of Hastings, and the Non-Weinshanker Defendants' complete failure, in their capacity as Board members, to adequately address or monitor Weinshanker's conduct, resulted in the elimination of Hastings' borrowing ability, crippling illiquidity, and eventually, caused the Debtors to file chapter 11 cases and liquidate to the detriment of its creditors. To the extent it even matters, the exact moment of Hastings' insolvency is a fact issue to be determined at trial, but even at this early stage of the litigation, the Liquidating Trustee has a report prepared by BDO – that the Defendants have seen – demonstrating severe insolvency on a balance sheet basis as of July 28, 2014; and given the state of Hastings' insolvency on that date, the Liquidating Trustee expects that he will be able to prove insolvency as of the Buyout Date of July 15, 2014. The Non-Weinshanker Defendants' argument that this issue somehow warrants dismissal ignores the law and disregards the Amended Complaint's well-pleaded allegations.[2]

---

[2]   While the Liquidating Trustee believes that insolvency has been adequately pleaded for purposes of Federal Rule 12(b)(6), to the extent that the Court finds otherwise, the Liquidating Trustee respectfully requests leave to amend the Amended Complaint to address the Court's concerns.

Finally, the Liquidating Trustee wishes to address some of the rhetorical arguments made by the Non-Weinshanker Defendants, which are both misleading <u>and apropos of nothing</u>.  For instance, in response to the question of "Why would a bank loan Hastings $15 million at the time of the Buyout in July 2015 and take second position priority if Hastings was an insolvent corporation?," the Liquidating Trustee first notes that there are plentiful examples of otherwise sophisticated financial institutions making ill-advised lending decisions, and second, the loan was made on or before the insolvency date alleged in the Amended Complaint.  Moreover, the Liquidating Trustee expressly alleges that the Pathlight second-lien loan (it bears repeating that the only reason this loan was even taken was to finance Weinshanker's acquisition of Hastings) was one of the factors contributing to Hastings' insolvency.  Amended Complaint, ¶ 22.  And the Non-Weinshanker Defendants' second rhetorical question – "How did Hastings have five million dollars of liquidity to complete the Pathlight Paydown in December 2014 if it was *insolvent* on a balance sheet basis" is even more nonsensical.  It goes without saying that balance sheet insolvency does not equate to being completely illiquid, and a corporation can be both insolvent *and have significant cash in its accounts* at the same time.  The fact that Hastings had the available liquidity to make the Pathlight Paydown makes that transfer no less harmful to the estates and creditors.

For the foregoing reasons, the Non-Weinshanker Defendants' Motion to Dismiss as to Counts II and III of the Amended Complaint should be denied.

C.     The Liquidating Trustee Has Standing to Pursue Breach of
       Fiduciary Duty Claims Against the Non-Weinshanker
       Defendants, Irrespective of Hastings' Solvency or
       <u>Insolvency.</u>

The Non-Weinshanker Defendants, in summary fashion, also argue that directors of

solvent corporations can never owe fiduciary duties to creditors, and accordingly, the

Liquidating Trustee cannot bring claims against them for acts or omissions occurring

while Hastings was solvent.  While the Liquidating Trustee alleges Hastings to have been

insolvent during all periods relevant to the Amended Complaint, the Plan confirmed by

the Court in these cases completely contradicts the Non-Weinshanker Defendants'

nonsensical position.  Indeed, the Liquidating Trustee may bring claims against the Non-

Weinshanker Defendants even if Hastings was solvent at the time of the complained-of

acts and omissions because the Plan makes clear that the Liquidating Trustee owns not

only claims that may be brought on behalf of Hastings' creditors, but claims brought on

behalf of Hastings itself.  The Plan gave the Liquidating Trustee ownership of all claims

"of any Debtor and/or any of the Estates against any Person or Entity, based in law or

equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect,

derivative, or otherwise." Plan, at pg. 7.[3]  The broad retention of rights granted to the

---

[3]     The Plan's vesting of Retained Causes of Action to the Liquidating Trustee is also
quite broad, and does not contain any exclusions or limitations based on solvency.  First,
Article IX(B) of the Plan states that "[o]n the Effective Date, the Liquidating Trust shall
be established pursuant to the Liquidating Trust Agreement for the purpose of, among
other things, (i) investigating and, if appropriate, pursuing Retained Causes of Action."
Plan, Article XI(B).  The Plan also provides that "[p]ursuant to section 1141(b) of the
Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust . . ."
Plan, Article XI(D).  "Liquidating Trust Assets" are defined to include:  "the Retained
Causes of Action," but exclude "any Cause of Action or Claim released pursuant to
the terms of this Combined Plan and Disclosure Statement, the Plan Confirmation Order, the
Final DIP Order or any other Final Order of the Bankruptcy Court."  Plan, at pg. 12.

Liquidating Trustee under the Plan means that he holds not only direct claims of Hastings, but also, derivative claims of Hastings' creditors, as well as claims of Draw Another Circle, LLC ("*DAC*"), a Debtor and Hastings' sole shareholder.  *See, e.g.*, *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377 (5th Cir. 2009) (holding that trustee of liquidating trust under confirmed chapter 11 plan holds both direct and derivative breach of fiduciary duty claims).

Ostensibly, the Non-Weinshanker Defendants' argument that no claims for breach of fiduciary duty can exist while Hastings was solvent is based on the fact that Hastings was (indirectly) wholly-owned by Weinshanker, through DAC.  As the Non-Weinshanker Defendants argue elsewhere in its Motion to Dismiss, if Hastings had a single shareholder, there could be no minority shareholders to protect from abuse and oppression, so how could Hastings have been injured by the acts and omissions of the Defendants?  While a fair question, the Non-Weinshanker Defendants' argument falls apart under applicable Texas law and also the particular facts of this case.

In Texas, "a subsidiary's director/officer has a fiduciary duty to the subsidiary corporation itself, even if wholly-owned, which is separate from their fiduciary duty to the parent corporation."  *Wooley v. Lucksinger*, 61 So.3d 507, 590-92 (La. 2011) (applying Texas law).  *Wooley* reflects well-settled Texas law that "a director is duty-bound to exercise business judgment for the sole benefit of the corporation, and not for

---

"Retained Causes of Action" are defined as "all Causes of Action and Retained Avoidance Actions . . . including Retained Avoidance Actions and D&O Claims."  Plan, at pg. 15.  "D&O Claims" are defined as "Causes of Action against any current or former directors and/or officers of the Debtors, for, inter alia, actual fraud, willful misconduct, gross negligence, negligence, breach of fiduciary duty, breach of the duty of care, or breach of the duty of loyalty."  Plan, at pg. 8.

the benefit of individual shareholders." *Ritchie v. Rupe*, 443 S.W.3d 856, 869 (Tex. 2014); *see also Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 721 (5th Cir. 1984) ("the directors' duties of loyalty and care run to the corporation, not to individual shareholders or even to a majority of the shareholders"); *First Am. Corp. v. Al-Nahyan*, 17 F. Supp.2d 10, 26 (D.D.C. 1998) ("directors of a wholly-owned subsidiary owe the corporation fiduciary duties, just as they would any other corporation"); *Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 376 B.R. 281, 284-85 (Bankr. D. Ariz. 2007) (noting that it would be a "shocking result" if a wholly-owned subsidiary were denied a breach of fiduciary duty claim against "a director self-deal[ing] at the expense of his corporation," even "though it would have such a cause of action if just one share of its stock were owned by someone other than the parent").[4]

The foregoing cases undoubtedly lead to the conclusion that the Defendants owed fiduciary duties to Hastings despite the fact that Hastings had a single shareholder (DAC).    Moreover, the Plan clearly provides that the Liquidating Trustee owns any breach of fiduciary duty claims that Hastings held against its officers and directors, and further owns the claims that DAC holds against Hastings' officers and directors (that DAC would otherwise have standing to bring as part of a shareholder derivative suit).

---

[4]      *Wooley* also cited several Delaware court decisions that refuse to conflate a parent and its wholly-owned subsidiary. *See, e.g.*, *Cochran v. Stifel Financial Corp.*, 2000 WL 286722 (Del. Ch. 2000) (subsidiary had a breach of fiduciary duty claim separate and distinct from a claim of parent corporation; "[o]ur law has traditionally respected the separate existences of a parent corporation and its wholly-owned subsidiary" and "[n]or are [we] inclined to read . . . an automatic conflation of a parent corporation and its wholly-owned subsidiary"); *Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 290 (Bankr. D. Del. 2006) (director of a wholly-owned subsidiary owes fiduciary duties to the subsidiary corporation; all that changes in insolvency is that the director will also owe a fiduciary duty to the subsidiary's creditors).

The Liquidating Trustee therefore has standing to bring any claims that DAC could have brought against Hastings' officers and directors prior to the bankruptcy filing irrespective of Hastings' solvency.

The anticipated response to this assertion is that the Liquidating Trustee's standing to pursue DAC's shareholder derivative suits is of no consequence, because it will be impossible to prove damages, especially for those acts and omissions resulting in transfers of Hastings' cash and property to other entities under the DAC umbrella (such as SPI and MovieStop). Presumably, a transfer of $1 from Hastings to another DAC-owned entity does not deprive DAC of any value, as that dollar remains under DAC's control. Such a response, however, ignores several key points specific to this case. First, several of the challenged transactions were *per se* not in "the best interests of [the parent]" (*id.*), as those transactions benefitted Weinshanker personally or his other entities, such as National Entertainment Collectibles Association ("*NECA*") and Exhibit A Circle, LLC ("*EAC*"), which were not owned by DAC or anyone under its umbrella. *See* Amended Complaint, ¶¶ 65-66 (alleging that the NECA Transfer, in the amount of $1,621,500, was made for the benefit of NECA, or even possibly, Weinshanker himself); 76 (allegations concerning Weinshanker's use of Hastings as source of no-cost capital and inventory for the Elvis Exhibition (which benefited EAC)); ¶ 78 (Hastings' net cash outlay on Elvis Exhibition was $1.375 million); and ¶ 80 (alleging Elvis Transfers benefitted Weinshanker and his entities exclusively).

Second, because the Liquidating Trustee alleges that the other companies that Weinshanker brought under the DAC umbrella using Hastings' money – MovieStop and SPI – were hopelessly distressed at the time of their acquisitions and at all times

thereafter, and because the Defendants' acts and omissions ultimately caused *all* of the entities (including DAC) to file for bankruptcy and liquidate, a reasonable inference can be drawn that *none* of the transfers and transactions discussed in the Complaint benefited DAC.

The Non-Weinshanker Defendants offer no basis to bar breach of fiduciary duty claims in these circumstances, since the parent (DAC) could have brought them derivatively as a shareholder of the subsidiary (Hastings).  *North American Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) ("[w]hen a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's grown and increased value.") (quoted by *Lightsway*, 520 B.R. at 470).

## II.     The Liquidating Trustee Alleges Substantial Injury to Hastings and its Creditors Resulting From The Defendants' Breaches of Fiduciary Duty; and Whether the Non-Weinshanker Defendants Obtained a Benefit is Irrelevant.

The Non-Weinshanker Defendants next argue that because Weinshanker was the sole (indirect) shareholder of Hastings, and because Weinshanker's conduct only harmed him and his wholly-owned entities, the Liquidating Trustee cannot prove damages under Texas law.  This argument suffers from a multitude of fatal flaws; most notably, it assumes that fiduciary duties never shifted to creditors (which is untrue), ignores the fact that *DAC*, and not Weinshanker, was the sole shareholder of Hastings, and further, is based upon a fundamental misunderstanding of Texas fiduciary duty law.

As discussed above at length, when Hastings became insolvent, or entered the zone of insolvency, the fiduciary duties of the Defendants shifted to creditors.

Accordingly, at the time the duties shifted, the relevant inquiry is not whether Weinshanker or minority shareholders were harmed; rather, it is the extent to which *creditors* were harmed. In this respect, the Liquidating Trustee alleges extensive damage to unsecured creditors (which, he reminds the Court, held over *$90 million* of claims as of the Petition Date [*see* Hastings' Amended Schedules of Assets and Liabilities, Case No. 16-11452-KJC, Docket No. 624, at p. 16.]) resulting from the Defendants' acts and omissions – namely, by Weinshanker using Hastings' cash and borrowing availability to fund interested transactions for which Hastings had no prospect of repayment or equity stake. *See, e.g.*, Amended Complaint, ¶¶ 1, 4, 48-49 ($12.6 million of damages related to MovieStop), 65-66 ($1,621,500 of damages related to NECA Transfer), 72 ($7.6 million of damages related to SPI), 78-79 ($1.375 million of damages related to Elvis Transfers), 87, 112 (alleging $30 million of damages related to SPI, MovieStop, NECA Transfer, Elvis Transfers and Pathlight Paydown). Candidly, it is offensive for the Non-Weinshanker Defendants to allege that "Weinshanker was the sole sufferer of any injury to Hastings," as it completely ignores the tens of millions of dollars of harm he caused to Hastings and its creditors.

In addition, and as discussed above, even absent a shifting of fiduciary duties to creditors, the Liquidating Trustee has ownership and standing to prosecute claims directly on behalf of Hastings, and derivatively on behalf of DAC. Accordingly, any acts and omissions of Weinshanker and the Non-Weinshanker Defendants that caused injury to either Hastings or DAC are actionable. Here, even under the (incorrect) assumption that Hastings' transfers of cash and property to SPI and MovieStop did not damage DAC (since DAC owned both of those entities), there were millions of dollars of other transfers

– namely, the NECA Transfer and the Elvis Transfers – that went outside the DAC corporate family and therefore injured DAC.  That Weinshanker may have benefited from those transfers is irrelevant, as his ownership of Hastings was indirect.

Moreover, the Non-Weinshanker Defendants' attempt to characterize the Liquidating Trustee's claims as being premised on a lack of "positive results" amounts to a false equivalency.  This is not a situation in which an officer or director made a bet on a risky transaction and lost, as the Non-Weinshanker Defendants would have this Court believe.  Rather, it is a situation in which Weinshanker engaged in extensive self-dealing using Hastings' assets, for which Hastings *could never have benefited*, for the very fact that the entities benefitting from Hastings' cash and property transfers were not owned by Hastings and had no contractual obligation to repay Hastings.  The "risk," in effect, was complete and absolute as soon as the transfers were made or the obligations incurred, the "positive results" were impossible to achieve, and hence, evidence concerning the "unsuccessful" transactions (as the Non-Weinshanker Defendants mischaracterize them) is equivalent to evidence of damages.

Simply put, the Liquidating Trustee does not engage in speculation and conjecture:  he has specifically alleged the multi-million-dollar outlays directed by Weinshanker, the impossibility of Hastings ever recovering those outlays, and the harm suffered by Hastings' creditors.  The facts alleged in the Amended Complaint are completely distinguishable from the line of cases cited on pages 21-22 of the Motion to Dismiss, each of which is either irrelevant, or are based on alleged breaches of the duty of care, and are grounded in poor business judgment as opposed to blatant self-dealing.  *U.S. Bank Nat'l Assn. v. Stanley*, 297 S.W.3d 815 (Tex. Ct. App. – Houston 2009) (in an oil

and gas exploration company – an inherently risky business, court rejected argument that capital expenditures *for the company* that did not result in corresponding revenues constituted damages); *Reardon v. Lightpath Technologies, Inc.*, 183 S.W.3d 429 (Tex. Ct. App. – Houston 2005) (damages discussion does not even relate to breach of fiduciary duty claims, but rather, shareholder rescission claims); *Fitzgerald v. Antoine Nat'l Bank*, 980 S.W.2d 228 (Tex. Ct. App. – Houston 1998) (not a breach of fiduciary duty case).

Finally, whether the Non-Weinshanker Defendants benefitted or not from the complained-of transactions is completely irrelevant, since the Liquidating Trustee is not alleging that they engaged in self-dealing.  Rather, as discussed below, the Liquidating Trustee claims that the Non-Weinshanker Defendants' breaches of the duty of loyalty are grounded completely in abdication; personal benefit is not a required element of such claims.

### III.   Under Texas Law, a Director's Abdication of Duty Constitutes a Breach of the Duty of Loyalty.

The Non-Weinshanker Defendants next argue that the Liquidating Trustee failed to state a claim for breach of fiduciary duty, based on an "unsupported" legal theory that directors breach their fiduciary duties by abdicating their responsibilities.   To the contrary, support abounds for the proposition than an abdication (complete in this case) of responsibility is tantamount to a breach of the duty of loyalty.  This is a critical point, in that breaches of the duty of loyalty are, as a matter of Texas law, outside the scope of any exculpation clauses in a corporate certificate of incorporation, and are not protected by the business judgment rule.

22

The Non-Weinshanker Defendants assert that their acts and omissions are shielded from liability by virtue of an exculpation clause (the "*Exculpation Clause*") contained in the Certificate. It states, in relevant part:

> No person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its shareholders for monetary damages for an act or omission in such person's capacity as a director of the Corporation, except to the extent such limitation or elimination of liability is not permitted by applicable law, as the same exists or hereafter may be changed.

Certificate, ¶ 7.1.

As an initial matter, the existence of an exculpation clause is not in and of itself a basis to support a motion to dismiss under Federal Rule 12(b)(6); at most, it gives rise to an affirmative defense. *See, e.g.*, *Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 561 (D. Del. 2008); *In re The Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007); *In re Tower Air, Inc.*, 416 F.3d 229, 242 (3d Cir. 2005) ("affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)"); *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (granting motion to dismiss based on affirmative defense improper because "the existence of a defense does not undercut the adequacy of the claim").

The Liquidating Trustee acknowledges that if his claims against the Non-Weinshanker Defendants were limited to breaches of the duty of care, the Exculpation Clause may very well shield certain of the Non-Weinshanker Defendants from liability in their capacity as directors. This, however, is not the case. Tex. Bus. Orgs. Code § 7.001(c)(1) states that an exculpation clause cannot "authorize the elimination or limitation of the liability of a governing person to the extent the person is found liable

23

under applicable law for (1) a breach of the person's duty of loyalty, if any, to the organization or its owners or members."  This makes the Exculpatory Clause all but useless to the Non-Weinshanker Defendants.

The Liquidating Trustee provides extensive factual allegations in the Amended Complaint supporting a conclusion that as to the Non-Weinshanker Defendants, they were a classic example of a "do-nothing" or "asleep at the wheel" Board.  Indeed, during the time in which one  or more of the Non-Weinshanker Defendants served on Hastings' Board, the Board:  (1) did not have a single meeting; (2) did not review or investigate, in their capacities as directors, any of the material transactions referenced in the Complaint; and (3) did not pass a single Board resolution (with a lone exception – a July 2015 resolution, forced upon the Board by BofA, with respect to amendments to the BofA facility caused by Weinshanker's prior breaches of the facility).  Amended Complaint, ¶¶ 91, 125, 127, 144.  The Non-Weinshanker Defendants were aware of their duties as directors, and what they should have done, as acknowledged by the Non-Weinshanker Defendants and based on well-pleaded allegations in the Amended Complaint:  (i) Shrader served as a director of Hastings on and off for over 20 years – including before the Buyout, when numerous Board meetings were held, and was outside corporate counsel to Hastings for many years [Motion to Dismiss, p. 4; Amended Complaint, ¶ 21]; (ii) Marrs served as a director for over 10 years and is a recognized expert on corporate governance matters [Motion to Dismiss, p. 4; Amended Complaint, ¶ 23]; (iii) Hershcopf is an experienced bankruptcy and corporate attorney that frequently advises corporate boards [Amended Complaint, ¶ 20]; and (iv) Van Ongevalle was an officer of Hastings

for over 20 years, rising to the level of President and Chief Operating Officer [Motion to Dismiss, p. 4; Amended Complaint, ¶ 22].

Moreover, the Liquidating Trustee alleges that the Non-Weinshanker Defendants (with the possible – though not confirmed – exception of Marrs) were aware of each of the complained-of transactions in the Amended Complaint, and in fact, participated in the structuring and execution of those transactions in their capacities as officers or outside counsel.   Amended Complaint, ¶¶ 40, 41, 50, 59, 68, 70, 81, 87.   For the Non-Weinshanker Defendants to argue that they were deprived of the information necessary to formulate a view on the riskiness of the complained-of transactions not only conflicts with the well-pleaded allegations of the Amended Complaint (for example, how could Van Ongevalle – *the President and COO of Hastings* – not know about Hastings' financial condition?), but if true, only serves to prove the Liquidating Trustee's point:  the Non-Weinshanker Defendants had a duty to become educated about the importance of the complained-of transactions (which no one disputes were material in nature), but instead did nothing.  This is an abdication of duty *writ large*.

Accordingly, the Liquidating Trustee's claims against the Non-Weinshanker Defendants are grounded in abdication of duty and a complete and utter failure to address Weinshanker's breaches.  The law is clear that such conduct amounts to a breach of the duty of loyalty, which, under Tex. Bus. Orgs. Code § 7.001(c), cannot be exculpated.

Courts interpreting Texas and Delaware law have held repeatedly that when a fiduciary "abdicate[s] his responsibility and fail[s] to exercise any judgment," that fiduciary is not acting in good faith, and can therefore be liable for a breach of the duty of loyalty. *In re Life Partners Holdings, Inc. Shareholder Derivative Litigation*, 2015 WL

8523103, at *10 (W.D. Tex. 2015) (further holding, at *12, that "When a disinterested director becomes uninterested in the problems facing the corporation and sits on his hands, he acts in bad faith. So when a director fails to act for the benefit of the corporation under circumstances in which an affirmative duty – the duty to monitor – requires such action, and does so with conscious disregard for that obligation, he breaches his duty of loyalty."); *see also Weaver v. Kellogg*, 216 B.R. 563, 584 (S.D. Tex. 1997) (an abdication of duty while having "actual, subjective awareness of the risk involved" constitutes gross negligence falling outside of the business judgment rule).

Importantly, courts draw a sharp distinction between officers and directors that actually *do* something, and those that that do nothing at all. The Texas Supreme Court, in *Sneed*, held that the business judgment rule applies only to officer and director conduct that is "within the exercise of their discretion or judgment . . ." *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015) (internal citations omitted). "This emphasis on decision-making – *an affirmative discretionary act* – suggests that an intentional failure to act in the face of a known duty to act constitutes" a breach of the duty of loyalty. *Tow v. Bulman*, 2016 WL 1722246, at *14 (E.D. La. Apr. 29, 2016) (emphasis added) (interpreting Texas law, and further holding that "[c]onsistent with nearly every federal court in Texas to have considered the issue, the Court finds that an officer or director who totally abdicates his or her corporate responsibilities" can be liable for breaches of the duty of loyalty under Texas law); *see also In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006) (a corporate fiduciary breaches his duty of loyalty when he "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties"). Moreover, an extensive line of caselaw in the context of

fiduciary duty actions brought by the Federal Deposit Insurance Corporation and the Resolution Trust Corporation against directors of failed financial institutions universally hold that the business judgment rule does not protect a breach that amounts to an abdication of responsibility. *See FDIC v. Schreiner*, 892 F.Supp. 869 (S.D. Tex. 1995); *FDIC v. Daniel*, 158 F.R.D. 101 (E.D. Tex. 1994); *RTC v. Acton*, 822 F.Supp. 307 (N.D. Tex. 1994); *FDIC v. Benson*, 867 F.Supp. 512 (S.D. Tex. 1994); *FDIC v. Harrington*, 844 F.Supp. 300 (N.D. Tex. 1994); *Resolution Trust Corp. v. Norris*, 830 F.Supp. 351 (S.D. Tex. 1993); *FDIC v. Brown*, 812 F.Supp. 722 (S.D. Tex. 1992); *RTC v. Bonner*, 1993 WL 414679 (S.D. Tex. 1993).

The Non-Weinshanker Defendants, conveniently ignoring the weight of this precedent, persist in arguing that even if a failure to exercise oversight is tantamount to a breach of the duty of loyalty, the Liquidating Trustee *still* fails to state a claim because he does not allege that they knew that they were not discharging their fiduciary obligations. The Amended Complaint, however, tells a very different story. Indeed, the Amended Complaint is replete with uncontroverted allegations which can only lead to the conclusion that they were aware of their fiduciary duties, that they knew they were abdicating those duties, that they knew of the damage that Weinshanker was causing to Hastings through his self-interested transactions, and yet, *they did absolutely nothing*.[5] None of the Non-Weinshanker Defendants could possibly assert that they were unaware

---

[5] It is notable that the Non-Weinshanker Defendants do not once state in their 40-page Motion to Dismiss that the Liquidating Trustee's core allegations in support of abdication of duty – namely, a failure to conduct or participate in Board meetings, a failure to investigate, analyze or opine on the complained-of transactions, and a failure to take any action to stop the massive outflow of cash and property resulting from the complained-of transactions – are at all in dispute.

of their duties and obligations as directors.   Furthermore – at least with Hershcopf, Shrader, and Van Ongevalle – they cannot feign ignorance of the very serious issues faced by Hastings under the Weinshanker regime, since they *worked, in their capacities as officers or outside counsel, on the very same transactions that the Liquidating Trustee now complains about.*   Therefore, the abdication of their fiduciary duties can only be considered intentional (i.e., far beyond grossly negligent) in their nature, and those breaches are not excused by the Exculpation Clause.

IV.   **The Liquidating Trustee States a Claim for Aiding and Abetting Breaches of Fiduciary Duty, and Accordingly, the Non-Weinshanker Defendants' Motion to Dismiss Counts IV and V Must Be Denied.**

Turning to Counts IV and V of the Amended Complaint, which are causes of action against the Non-Weinshanker Defendants for aiding and abetting Weinshanker's breaches of fiduciary duty, the Non-Weinshanker Defendants articulate three grounds for their dismissal:  first, that such counts cannot survive if the Liquidating Trustee's claims for breach of fiduciary duty against Weinshanker fail; second, that a fiduciary cannot aid and abet another fiduciary's breach; and third, the Liquidating Trustee failed to prove "knowing participation" by the Non-Weinshanker Defendants.   Each of these grounds, as discussed below, are entirely without merit.

A.   Weinshanker Breached His Fiduciary Duties to Hastings
      and Its Creditors.

As an initial matter, the Liquidating Trustee acknowledges that an aiding and abetting claim is premised upon an underlying breach of fiduciary duty.   Accordingly, the survival of the Liquidating Trustee's aiding and abetting claims will depend upon the survival of his claims against Weinshanker.   The Liquidating Trustee is separately and concurrently responding to Weinshanker's companion motion to dismiss, and asserts that

his breach of fiduciary duty claims against Weinshanker easily withstand scrutiny under Federal Rule 12(b)(6).  Once Weinshanker's motion to dismiss is denied, this argument put forth by the Non-Weinshanker Defendants will become moot.

> B.    Notwithstanding the Non-Weinshanker Defendants' Independent Fiduciary Duties to Hastings and Its Creditors, They Can Still be Held Liable for Aiding and Abetting <u>Weinshanker's Breaches of Fiduciary Duty</u>

Next, the Non-Weinshanker Defendants argue that under the (inapplicable) Delaware standard, an aiding and abetting claim cannot be brought against a party who already stands in a direct fiduciary relationship to the plaintiff.  Texas law, however, which applies here, does not support this conclusion, and even if it did, the Liquidating Trustee can maintain claims against those Non-Weinshanker Defendants that aided and abetted Weinshanker's breaches while they acted in a non-fiduciary capacity.

Under Texas law, aiding and abetting a breach of fiduciary duty is a recognized cause of action, and the elements of such a claim are:  (1) a breach of fiduciary duty by a third party; (2) the aider's knowledge of the fiduciary relationship between the plaintiff and the third party; and (3) the aider's awareness of his participation in the third party's breach of its duty.  *Darocy v. Abildtrup*, 345 S.W.3d 129, 137-38 (Tex. App. – Dallas 2011).  Despite the Non-Weinshanker Defendants' claims to the contrary, these elements *are not identical* to those applied by courts in Delaware, which expressly incorporate a requirement that the aider be a nonfiduciary.  *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *16 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) (elements of an aiding and abetting claim are "(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a nonfiduciary defendant knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted

29

action of the fiduciary and nonfiduciary"). Given the dissimilarities between the standards propounded by the Texas and Delaware courts, the Non-Weinshanker Defendants' reliance on Delaware law in asserting that a fiduciary cannot be liable for aiding and abetting is misplaced.

Indeed, there is no prohibition under Texas law for a director being liable for aiding and abetting of breaches of fiduciary duty of a fellow director, or for limiting aiding and abetting liability to non-fiduciaries. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942) (cited for the proposition that "[i]t is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such"); *Kastner v. Jenkins & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App. – Dallas 2007) (in case asserting aiding and abetting claim against attorney for tortfeasor, court, while granting summary judgment to attorney on other grounds, did not do so on basis of blanket prohibition); *Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex. App. 1998, pet. denied) (citing *Kinzbach Tool Co.* to disagree with a party's contention that Texas law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty); *Sw. Tex. Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App. 2000) ("A third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable.") (citations omitted). Accordingly, the Liquidating Trustee's aiding and abetting claims can proceed even for periods in which the Non-Weinshanker Defendants were fiduciaries of Hastings.

But even if this Court applies Delaware law to this matter and holds that the Non-Weinshanker Defendants cannot be held liable for aiding and abetting while they were

30

themselves fiduciaries of Hastings, the Liquidating Trustee can still maintain claims against those Non-Weinshanker Defendants who aided and abetted Weinshanker's breaches before and after they became fiduciaries.

This is particularly the case with respect to the actions of Hershcopf before she was appointed to the Board in November 2014.  Prior to her appointment, Hershcopf acted as counsel to Weinshanker and certain of his entities (including NECA, who was the beneficiary of the fraudulent NECA Transfer), and she and her firm had an extensive business relationship with Weinshanker, having represented him in, among other things, the Buyout.  Amended Complaint, ¶ 20, 89.  After the Buyout Date, Hershcopf continued to represent Weinshanker and his entities (but not Hastings, at least not until her firm was retained as its bankruptcy counsel), and was consulted on multiple occasions on a host of Hastings-related matters, including the SPI and MovieStop transactions.   Amended Complaint, ¶ 20.  As a result, Hershcopf was well aware of the implications that both acquisitions had on Hastings; indeed, she knew that Weinshanker largely funded those acquisitions, and subsequent capital improvements and purchases of inventory, through Hastings' resources (despite Hastings having no ownership interest or direct economic stake in either business).  Moreover, Hershcopf was aware of the fiduciary relationship between Weinshanker and Hastings (after all, she played a role in drafting the corporate formation documents related to the Buyout, including the very Exculpation Clause that is at issue in this case, and provided advice to Weinshanker on certain structuring issues – including those related to the SPI acquisition – that would have required her to have knowledge of Hastings' corporate documents).  Not only did Hershcopf do nothing to stop those acquisitions (or at least stop Weinshanker from using Hastings' assets to fund

them), she actively facilitated those transactions in her capacity as outside counsel to Weinshanker.

> C.    The Liquidating Trustee Sufficiently Alleges "Knowing Participation."

Finally, the Non-Weinshanker Defendants assert that the Liquidating Trustee failed to allege "knowing participation" in Weinshanker's breaches of fiduciary duty, thereby giving rise to a dismissal of the Liquidating Trustee's aiding and abetting claims. This assertion, however, contradicts a multitude of well-pleaded allegations in the Amended Complaint, in which the Liquidating Trustee unambiguously asserts that the Non-Weinshanker Defendants **knew** about Weinshanker's actions, **knew** that Weinshanker had fiduciary duties to Hastings (and its creditors), and **knew** how those actions affected Hastings.  Amended Complaint, ¶¶ 150-52, 154-58, 164-68.

The Non-Weinshanker Defendants also place an inordinate amount of attention on the Liquidating Trustee's allegations that the Non-Weinshanker Defendants "knew or should have known" about Weinshanker's actions.  Irrespective of the Liquidating Trustee's careful drafting of his allegations against the Non-Weinshanker Defendants, those allegations, read together and in context, can only lead to the conclusion that the Non-Weinshanker Defendants – specifically, Hershcopf, Shrader and Van Ongevalle – had the requisite knowledge of Weinshanker's fiduciary duties, and his actions, to survive the Motion to Dismiss.  Indeed, such knowledge can be readily inferred – and therefore plausible – based on the Liquidating Trustee's allegations concerning the Non-Weinshanker Defendants' experience, both with Hastings and generally:

- How would Van Ongevalle – himself a corporate fiduciary of Hastings for well over a decade – not know that Weinshanker was a fiduciary of the

corporation of which he was the sole director (at least initially) and owner?  And given his position as President and COO of Hastings, how could he not know about the various transactions that Weinshanker conducted for the benefit of his other companies, especially when those transactions represented in tens of millions of dollars in value, leaving Hastings' coffers for no consideration?

- How would Hershcopf – a highly experienced corporate and bankruptcy attorney, and Weinshanker's counsel on multiple transactions (including the Buyout), whose firm drafted Hastings' corporate documents, not know that Weinshanker was a fiduciary of Hastings?  And how could Hershcopf not know of the impact of the complained-of transactions in the Amended Complaint when she was directly consulted on each of them?

- How would Shrader – the primary outside corporate counsel and a board member of Hastings dating to the 1990s – not know that Weinshanker was a fiduciary of Hastings?  And how could Shrader not know of the impact of the complained-of transactions in the Amended Complaint when he was directly consulted on each of them?

These questions can only be answered thusly:   each of these Defendants knew of Weinshanker's fiduciary duties, knew about the complained-of transactions, and knew about the cost of these transactions to Hastings.  The Amended Complaint makes this clear.

Courts routinely hold that an allegation that a defendant "knew or should have known" about something is sufficient to meet a scienter requirement for Federal Rule

12(b)(6) purposes.    *Sargent v. Genesco, Inc.*, 492 F.2d 750, 761 (5th Cir. 1974) ("the complaint in the instant case which states that the defendant brokers-underwriters 'knew or should have known' of the misstatements in [the complaint] even though phrased in the disjuncture, is sufficient to state a claim for 10b-5 relief." *Id.* at 761 (citing *Heit v. Weitzen,* 402 F.2d 909, 914 (2nd Cir. 1968) ("if some form of scienter test is to be applied …we think that the alternative allegation of actual knowledge of falsity is amply sufficient as a matter of pleading"); *Brickley for CryptoMetrics, Inc. Creditor's Trust v. ScanTech Identification Beams Systems, LLC,* 566 B.R. 815, 848 (W.D. Tex. 2017) (finding trustee sufficiently pled the scienter requirement of actual intent with complaint allegations including that the defendants knew or should have known of debtors' inability to pay creditors); *NTR Bullion Group, LLC v. Liberty Metals Group, LLC,* 2014 WL 1516311, *3 (N.D. Tex. April 18, 2014) ("Moreover, Liberty must plead sufficient facts to permit the court to draw the reasonable inference that NTR met the relevant scienter requirement"); *Grubin v. Rattet (In re Food Mgmt. Group, LLC),* 380 B.R. 677, 703 (Bankr. S.D.N.Y. 2008) (recognizing that an allegation that a defendant 'knew or should have known' is not sufficient to allege recklessness, but "[v]iewed as a whole, as it must be in evaluating a Rule 12(b)(6) motion . . .the complaint alleges much more, easily supporting a strong inference of recklessness.").

For the foregoing reasons, the Non-Weinshanker Defendants' contention that the Liquidating Trustee inadequately pleaded their "knowing participation" in Weinshanker's scheme is readily contradicted by the Amended Complaint and applicable law.    Their Motion to Dismiss as to Counts IV and V must be denied.

WHEREFORE, Plaintiff Curtis R. Smith, Liquidating Trustee, respectfully requests that this Court deny the Motion to Dismiss in its entirety.

Dated:  August 13, 2018

Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, Delaware 19809
Telephone:  302.444.6710
Facsimile:  302.444.6709
e-mail: marias@goldmclaw.com

and

Thomas R. Fawkes, Esq.
Brian J. Jackiw, Esq.
GOLDSTEIN & MCCLINTOCK LLLP
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone:  312.337.7700
Facsimile:  312.277.2305
e-mail:    tomf@goldmclaw.com
           brianj@goldmclaw.com

*Special Litigation Counsel to Curtis R. Smith, Solely as Trustee of the Hastings Creditors' Liquidating Trust*