## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| Draw Another Circle., *et al.*,[1] | : | |
| | : | |
| | : | Case No. 16-11452 (KJC) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| _____ | : | |
| | : | |
| Curtis R. Smith, Liquidating Trustee | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. Proc. No. 17-51041 (KJC) |
| | : | (Re: D.I. 29, 31) |
| Joel Weinshanker, Alan Van Ongevalle, Cathy | : | |
| Hershcopf, Frank Marrs and Jeffrey Shrader | : | |
| | : | |
| Defendants. | : | |
| | : | |
| _____ | : | |

### MEMORANDUM[2]

### BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court are the motions by Defendant Joel Weinshanker[3] and Defendants Alan

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Draw Another Circle, LLC (2012); Hastings Entertainment, Inc. (6375); MovieStop, LLC (9645); SP Images, Inc. (7773); and Hastings Internet, Inc. (0809). Under the confirmed First Amended Joint Combined Disclosure Statement and Plan of Liquidation (the "Plan"), all of the Debtors' bankruptcy cases aside from Draw Another Circle, LLC have been closed.

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. The Bankruptcy court has the power to enter an order on a motion to dismiss even if the matter is non-core or it has no authority to enter a final order on the merits. *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, 2014 WL 1320145, *2 (Bankr. D. Del. April 2, 2014) citing *In re Trinsum Grp., Inc.*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After *Stern v. Marshall*, the ability of bankruptcy judges to enter interlocutory orders in proceedings...has been reaffirmed..."); *Boyd v. King Par, LLC*, Case No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10, 2011)("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment...does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").

[3] Adv. D.I. 29, 30.

Van Ongevalle, Cathy Hershcopf, Frank Marrs and Jeffrey Shrader[4] to Dismiss Plaintiff's
Amended Complaint filed by Curtis R. Smith, acting as the Liquidating Trustee (the "Trustee") of
the Hastings Creditors' Liquidating Trust (the "Trust").[5] The Amended Complaint alleges breach
of fiduciary duty, aiding and abetting breach of fiduciary duties, alter ego/piercing the corporate
veil, and attorney fees/costs. For the reasons set forth below, the Defendants' Motions to Dismiss
will be granted in part and denied in part.

## BACKGROUND

On June 13, 2016, Draw Another Circle, LLC ("DAC"), Hastings Entertainment, Inc.
("Hastings"), MovieStop, LLC ("MovieStop"), SP Images, Inc. ("SPI"), and Hastings Internet,
Inc. (collectively, the "Debtors") filed voluntary chapter 11 petitions. On February 14, 2017, the
Court approved and confirmed the Debtors' and Creditor Committee's First Amended Joint
Combined Disclosure Statement and Plan of Liquidation under Chapter 11 of the Bankruptcy Code
(the "Plan").[6] The Plan became effective on February 20, 2017. On August 31, 2017, the Trustee
commenced this adversary proceeding against Joel Weinshanker ("Weinshanker"), Alan Van
Ongevalle ("Van Ongevalle"), Frank Marrs ("Marrs"), Cathy Herschopf ("Herschopf") and Jeffrey
Shrader ("Shrader").

On October 27, 2017, Weinshanker moved to dismiss the Complaint.[7] Briefing on
Weinshanker's Motion to Dismiss the Complaint was completed on November 20, 2017.[8] Rather
than proceed to argument, both parties agreed to mediation, which proceeded without resolution.
On May 16, 2018, the parties submitted a stipulation proposing that the Court grant leave for the

---

[4] Adv. D.I. 31, 32.
[5] *See* Adv. D.I. 24.
[6] D.I. 1195.
[7] Adv. D.I. 5, 6.
[8] Adv. D.I. 11.

Trustee to file an Amended Complaint, and the request was granted on May 17, 2018.[9] On June 7, 2018, the Trustee filed the Amended Complaint (the "Amended Complaint").[10] On July 20, 2018, Weinshanker filed a Motion to Dismiss the Amended Complaint.[11] Herschopf, Marrs, Van Ongevalle and Shrader also filed a Motion to Dismiss Amended Complaint on July 20, 2018.[12]

## FACTUAL ALLEGATIONS

### A. Hastings Background

Hastings was a Texas Corporation founded in 1968, specializing in entertainment products, including books, movies, software, periodicals, video games, hobby, sports and recreation products, lifestyle products and consumer electronics.[13] Hastings operated through 123 stores in 19 states, as well as online, and employed 3,500 people.[14] Hastings' stock was publicly traded on the NASDAQ stock exchange from its initial public offering in 1998 through July 15, 2014. A leveraged buyout of Hastings closed on July 15, 2014 (the "Buyout Date").[15] Hendrix Acquisition Corp. ("Hendrix"), a special purpose entity owned and controlled by Weinshanker, purchased all of the outstanding shares of Hastings for $21,406,824.80, or $3.00 per share.[16] The acquisition was funded largely by a $15 million second-lien loan from Pathlight Capital ("Pathlight").[17] Weinshanker also personally contributed just over $7 million to the transaction.[18] At the time of

---

[9] Adv. D.I. 22, 23.
[10] Adv. D.I. 24.
[11] Adv. D.I. 29.
[12] Adv. D.I. 31.
[13] Am. Compl. ¶ 21.
[14] *Id.*
[15] Am. Compl. ¶ 22.
[16] *Id.*
[17] *Id.*
[18] *Id.*

the buyout, Hastings had a first-lien revolving credit facility with Bank of America, N.A. ("BofA").[19]

Subsequent to the buyout, Hendrix was merged into DAC, a Delaware limited liability company that was owned 71.1% by Weinshanker and 29.9% by National Entertainment Collectibles Association ("NECA") (which was wholly owned by Weinshanker).[20] NECA subsequently transferred its ownership interest of DAC to Weinshanker, making Weinshanker the sole owner of DAC's membership interests.[21]

**B. Hastings' Board**

On November 30, 2014, Weinshanker elected Marrs, Herschopf and Shrader (the "Non-Weinshanker Directors"), as well as Van Ongevalle, to the Hastings Board and remained the Chairperson.[22] Marrs served on the Board from April 2003 until the Buyout date, and was reappointed in November 2014.[23] Herschopf had served as an attorney for Weinshanker and his businesses prior to her appointment on the Board.[24] Van Ongevalle was a senior executive at Hastings, and served as President and Chief Operating Officer from February 2013 through December 9, 2015.[25] Shrader served as outside counsel for Hastings, and as a director for Hastings, for many years prior to the Buyout date.[26] Marrs resigned from the Board on July 24, 2015.[27] Van Ongevalle, Shrader and Herschopf resigned from the Board on December 9, 2015.[28] Ken Simon, a

---

[19] Am. Compl. ¶ 2. The Amended Complaint alleges that Hastings had availability of $60 million on its Bank of America revolving loan as of July 15, 2015. Am. Compl. ¶ 45.

[20] Am. Compl. ¶ 23. In addition to the entities used to facilitate the buyout, Weinshanker also owns entities related to Graceland, Elvis Presley's former residence.

[21] *Id.*

[22] Am. Compl. ¶ 16.

[23] *Id.* ¶ 23.

[24] Am. Compl. ¶ 20.

[25] *Id.* ¶ 22, 24. Van Ongevalle had been at the company since 1992, serving in various roles.

[26] *Id.* ¶ 21.

[27] *Id.* ¶ 23.

[28] *Id.* ¶ 24.

tenured retail executive previously unaffiliated with Hastings, was appointed to the Board on or about December 9, 2015.[29] As of the petition date, the only members of the Board were Weinshanker and Simon.[30]

## C. Post-Buyout Transactions

After the Buyout Date, Weinshanker negotiated and closed several acquisitions under the ownership of DAC.[31] The Amended Complaint alleges that, despite misgivings by senior management, including Van Ongevalle, and Board members, including Van Ongevalle and Shrader, none of the Board members actively sought to prevent Weinshanker from engaging in such transactions.[32] The Amended Complaint also alleges that Weinshanker neither consulted with, called a meeting of, nor sought approval from the Board for actions taken on behalf of Hastings: specifically, the Board played no formal or informal roles in reviewing, contemplating, advising on or approving any of the material transactions or transfers.[33]

### i. Sports Images

Sports Images, Inc. ("Sports Images") was a licensed distributor of sports and entertainment products and apparel, including items licensed by Major League Baseball, the National Football League, the National Hockey League, the National Basketball Association, Marvel Comics and DC Comics.[34] On July 28, 2014, SI Acquisition, LLC ("SI"), owned by Weinshanker, was created to acquire the equity of Sports Images. The Stock Purchase Agreement between SI and Sports Images provided that Sports Images' shares would be purchased for fifty percent of the sum of: (a) the amount of cash collected from sale of inventory and collection of

---

[29] Am. Compl. ¶ 25
[30] *Id.* ¶ 26.
[31] Am. Compl. ¶ 27.
[32] *Id.* ¶ 28.
[33] *Id.* ¶ 91.
[34] Am. Compl. ¶ 52.

accounts receivables as of the closing date, less amounts necessary to satisfy indebtedness of Sports Images; and (b) the net profits generated by Sports Images for a three-year period following the closing date from its existing vendor base.[35] Additionally, Weinshanker agreed to pay off, over time, Sports Images' $750,000 bank loan with Eastern Bank.[36] To facilitate this transaction, SPI, a subsidiary of SI owned by Weinshanker, purchased the assets of Sports Images.[37] Hastings had no direct economic interest in the SPI acquisition; however, Weinshanker stated that the "transaction was purely to the benefit of Hastings."[38] Weinshanker stated that having a distributor under the DAC umbrella with Hastings allowed Hastings to leverage better terms with vendors.[39]

Almost immediately after the SPI acquisition closed, Weinshanker caused Hastings to purchase the assets from SPI for $3,000,000 in cash, although the SPI inventory was never actually handed over [or given physical possession of] to Hastings.[40] Instead, Weinshanker caused Hastings to enter into a consignment agreement with SPI, whereby Hastings would consign inventory to SPI for sale and receive, in return, 85% of the sale proceeds, with 15% retained by SPI as commission.[41] This agreement was never memorialized in writing.[42] SPI and Hastings also entered into a Shared Services Agreement, in which Hastings agreed to perform the administrative functions of SPI for $5,000 per month.[43]

Further, Weinshanker, acting through NECA, caused Hastings to transfer $1,621,500 to NECA on April 16, 2015, as a purchase of inventory; however, there is no evidence that any

---

[35] *Id.* ¶ 56.
[36] *Id.* ¶ 57.
[37] Am. Compl. ¶ 58.
[38] Am. Compl. Ex. J at 46:8-14.
[39] *Id.* at 47:3-7.
[40] Am. Compl. ¶ 60.
[41] *Id.* ¶ 61.
[42] *Id.*
[43] *Id.* ¶ 63.

inventory was ever actually transferred, but was instead intended to satisfy a debt in the same amount that SPI owed to NECA.[44] On May 19, 2015, DAC acquired SPI, and SI dissolved.[45] The Amended Complaint alleges that Hastings' dealings with SPI caused, at minimum, $7.6 million in damages to Hastings and reduction in availability of the BofA revolver to $13 million.[46]

    *i. MovieStop*

    MovieStop was a retailer of new and used movies and related merchandise.[47] MovieStop was founded in 2004 as a division of GameStop, Inc. ("GameStop"), and spun off to private owners in 2012.[48] Following its spin-off from GameStop, MovieStop experienced financial distress and was at risk of having its line of credit cancelled.[49] Further, the market for DVDs was on the decline, as video-on-demand services became more readily available.[50] Despite pessimistic projections, Weinshanker aggressively pursued the acquisition of MovieStop.[51]

    On October 31, 2014, MovieStop Acquisition, LLC, a special purpose vehicle created by Weinshanker, entered into a Membership Interest Purchase Agreement with Jeffrey Wilson and Russell Howard, to purchase the membership interests of MovieStop.[52] The sole consideration for MovieStop's common membership interests was MovieStop Acquisition, LLC's assumption of MovieStop's liabilities.[53] As part of the transaction, the preferred membership interests in MovieStop, held by GameStop, Inc., were redeemed for $627,000.[54] The Amended Complaint

---

[44] *Id.* ¶ 65-66.
[45] Am. Compl. ¶ 65-66.
[46] *Id.* ¶ 67, ¶ 72.
[47] Am. Compl. ¶ 32.
[48] *Id.*
[49] *Id.* ¶ 33.
[50] *Id.* ¶ 34.
[51] Am. Compl. ¶ 35.
[52] *Id.* ¶ 36.
[53] *Id.*
[54] *Id.* ¶ 37.

alleges that the purchase of GameStop's preferred equity interest was funded through Hastings' BofA revolver.[55] On or about July 22, 2015, the membership interests of MovieStop held by MovieStop Acquisition, LLC were transferred to DAC.[56]

Weinshanker testified that there was a three-part business rationale to support the acquisition of MovieStop. First, Weinshanker and the Hastings management believed that the acquisition could add "trend" to MovieStop's offerings.[57] Second, combining MovieStop and Hastings would provide leverage with vendors, and better pricing to benefit Hastings.[58] Third, the MovieStop retail format would allow Hastings to experiment with smaller facilities.[59]

### iii. Las Vegas Exhibition

Weinshanker owned several entities related to the estate of Elvis Presley ("Presley"). Among other things, Weinshanker owned a stake in Graceland, Presley's former residence in Memphis, Tennessee.[60] One of Weinshanker's entities, Exhibit A Circle ("EAC") produced and operated an Elvis Presley Exhibition in Las Vegas (the "Exhibition").[61] In late 2014, EAC signed a ten-year lease with Westgate Las Vegas Resort and Casino to operate the Exhibition.[62] The Amended Complaint alleges that Hastings plowed hundreds of thousands of dollars into Pop Goes the Shop, a retail shop adjacent to the Exhibition, as well as capital outlays to the Exhibition estimated at $1.375 million.[63] There was no document evidencing a repayment obligation by EAC

---

[55] *Id.* ¶ 38.
[56] Am. Compl. ¶ 43.
[57] Am. Compl. Ex. J at 58:11-60:1, 60:15-61.5. "Trend" refers to toys, games and accessories related to movies. Am. Compl. Ex. J at 59:23-60:1.
[58] Am. Compl. Ex. J at 62:1-64:4.
[59] *Id.* at 64:5-19.
[60] Am. Compl. ¶ 73.
[61] *Id.* ¶ 74.
[62] *Id.* ¶ 75.
[63] *Id.* ¶ 76, ¶ 78.

to Hastings.[64] When Hastings demanded repayment in May 2016, it was told that payment would be deferred until litigation with Westgate was resolved.[65] Despite payment being delayed, Westgate did release certain purchased inventory to Hastings as part of a stipulation entered by the Bankruptcy Court.[66]

### iii. Pathlight Loan Payment

In connection with the leveraged buyout of Hastings, Pathlight made a second-lien term loan of $15 million ("Pathlight Loan").[67] The Pathlight Loan permitted, but did not require, a prepayment of up to $5,000,000 of the principal balance without penalty. On December 2014, Weinshanker directed that $5 million of the principal balance of the Pathlight Loan be repaid, to realize savings on interest costs for the remainder of the term.[68] The Amended Complaint states that "the Pathlight Paydown may have been prudent for a solvent company with substantial liquidity."[69] However, the Trustee alleges that due to the diminished availability of the BofA revolver, and other costly transactions, Hastings was not equipped to absorb a $5 million cash loss.[70] Moreover, there was no urgency in this paydown as Hastings was current on its payments at the time.[71]

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement showing that the pleader is entitled to some relief.[72] The pleading standard does not

---

[64] *Id.* ¶ 77.
[65] Am. Compl. ¶ 79. The Elvis Exhibition abruptly closed in March 2016, only months after opening, despite being bound to the 10-year lease with Westgate.
[66] *Id.*
[67] *Id.* ¶ 82.
[68] *Id.* ¶ 84.
[69] Am. Compl. ¶ 87.
[70] *Id.* ¶ 85.
[71] *Id.* ¶ 85.
[72] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

require detailed factual allegations; it must be more than a defendant-unlawfully-harmed-me accusation.[73] "In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law."[74] The burden is on the defendant to prove that no claim has been presented.[75] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must show that the grounds of his entitlement to relief amount to more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.[76]

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[77] The plausibility standard is not akin to the probability standard but requires more than the sheer possibility that a defendant acted unlawfully.[78] Two principals underlie the *Twombly* standard. First, a court's acceptance of a complaint's allegations as true is inapplicable to legal conclusions, and threadbare recitals of cause of action elements, supported by conclusory statements will not suffice.[79] Second, determining whether a complaint states a plausible cause of action requires the court to rely on its experience and common sense.[80] *Twombly* requires that a pleading nudge claims "across the line from conceivable to plausible."[81]

The Third Circuit follows a three-step process to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

---

[73] *Id.*
[74] *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).
[75] *Hedges v. U.S.*, 404 F.3d 744 (3d Cir. 2005).
[76] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).
[77] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[78] *Id.* at 678.
[79] *Id.*
[80] *Id.*
[81] *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570).

"First, the court must 'take note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"[82]

The relevant record under consideration consists of the complaint and any document integral to the complaint.[83] When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."[84] The movant carries the burden of showing that the dismissal is appropriate.[85]

## DISCUSSION

The Trustee's Amended Complaint contains seven counts: (1) breach of fiduciary duty against Weinshanker; (2) breach of fiduciary duty against Herschopf, Shrader and Marrs; (3) breach of fiduciary duty against Van Ongevalle; (4) aiding and abetting breach of fiduciary duties against Herschopf, Shrader and Marrs; (5) aiding and abetting breach of fiduciary duty against Van Ongevalle; (6) alter ego/piercing the corporate veil against Weinshanker; and (7) attorneys' fees and costs against all defendants. The Defendants move to dismiss all counts.

*I. Breach of Fiduciary Duty to Hastings*

In Count One of the Amended Complaint, the Trustee alleges that Weinshanker owed Hastings a duty of obedience, duty of care, duty of loyalty, duty of good faith and duty of fair dealing.[86] In Count Two, the Trustee alleges that, as directors of Hastings, Herschopf, Shrader, and Marrs owed Hastings a duty of care, duty of loyalty, duty of good faith and duty of fair dealing,

---

[82] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Marminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).
[83] *In re Tropicana Entertainment, LLC*, 520 B.R. 455 (Bankr. D. Del. 2014) (citing *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2012).
[84] *Id.* (citing *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).
[85] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp.2d 404, 408 (D. Del. 2007).
[86] Am. Compl. ¶ 101.

and breached these duties.[87] In Count Three, the Trustee alleges that Van Ongevalle owed Hastings a duty of care, duty of loyalty, duty of good faith and duty of fair dealing, and breached these duties.[88] Incorporated into each of these counts is the Trustee's allegation that the parties violated Texas Business Organizations Code § 21.418 ("TBOC").

    *i. Choice of Law*

    Before the Court can evaluate the merits of the claims based on state law, I must first decide which state law governs the claims. The allegations in the Amended Complaint involve Debtors organized or incorporated in Texas, Delaware, Massachusetts and Nevada, and actions relating to stores across the country.[89] However, Hastings, on whose behalf the Trustee is bringing the claims, is incorporated in Texas. Further, while Texas acknowledges the breach of fiduciary duty of obedience, Delaware does not. "If the laws differ, the next step in deciding choice of law is which state has the 'most significant relationship.'"[90] The most significant test relies on the Restatement (Second) of Conflicts, which sets forth factors to examine a conflict of laws situation.[91]

    The first level involves a general test, weighing public policy issues of the jurisdiction. Restatement (Second) of Conflicts § 6 lists factors that the court should consider including: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic

---

[87] *Id.* ¶ 116.

[88] *Id.* ¶ 134.

[89] DAC and MovieStop were organized as limited liability companies. SPI, Hastings, and Hastings Internet were corporations.

[90] *Vanderbilt Mortg. & Finance, Inc. v. Posey*, 146 S.W.3d 302 (Tex. App.-Texarkana 2004).

[91] *Id.*

policies underlying the particular field of law, (6) certainty, predictability, and uniformity of results, and (7) ease in the determination and application of the law to be applied.[92]

The second level of analysis concerns the specific area of law, in this case torts. Restatement (Second) of Conflicts § 145 provides specific factors to aid in the tort analysis. These factors include, "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and of business of the parties; and (d) the place where the relationship, if any, between the parties was entered."[93] "The Restatement generally encourages courts to rely less on the Section 6 general principles than on the application of the factors found in the sections addressed to specific types of claims."[94]

Given that this set of fiduciary duty claims rest on fiduciary duties not recognized in Delaware, conduct taking place in Texas, and a Texas corporation, § 145 dictates that the place with most significant relationship is Texas. While the stores are located throughout the country, the conduct and place of business both lie in Texas. That, coupled with Texas' recognition of the duty of obedience, makes Texas the appropriate jurisdiction and choice of law for the first set of fiduciary duty allegations.

*ii. Substantive Claims*

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant."[95]

---

[92] *Id.* at 312. (citing Restatement (Second) of Conflicts § 6(2) (1971)).

[93] *Id.* (citing Restatement (Second) of Conflicts § 145(2) (1971)).

[94] *Alarcon v. Velazquez*, 552 S.W.3d 354. 361 (Tex. App.-Houston [14th Dist.] 2018) (citing *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 357 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

[95] *Anderton v. Cawley*, 378 S.W.3d 38 (Tex. App-Dallas 2012) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006, pet. denied)).

Officers and directors owe fiduciary duties to their corporation.[96] Under Texas law, officers and directors of a corporation owe duties of care and loyalty to the corporation itself; however, such duties are not owed to creditors of the corporation.[97] Further, in Texas, the fiduciary duty of a director includes not only the duties of loyalty, good faith and care, but also obedience.[98]

The duty of obedience requires a director to avoid committing ultra vires acts, i.e. acts beyond the scope of corporate authority.[99] The duty of obedience is rarely implicated, given that modern corporation laws define corporate powers expansively and permit broad purpose clauses in the certificate of formation.[100] The duty of loyalty requires that the officer act in good faith and must not allow personal interests to prevail over the corporation's interests.[101] A director is deemed "interested" if he or she (1) makes a personal profit from a transaction involving the corporation or usurps corporate opportunity; (2) buys or sells assets of the corporation; (3) transacts business in his director's capacity with a corporation of which he or she is previously associated; or (4) transacts business in his capacity as director with a family member.[102] Transactions involving an interested director are not voidable unless shown to be unfair to the corporation.[103] However, if the director is found to have committed fraud, over reaching, or waste of corporate assets, the transaction will be set aside.[104] The duty of care requires a director to be diligent in managing the

---

[96] *Tow v. Bulmahn*, 2016 WL 1722246 (E.D. La. April 29, 2016) (citing *Gen. Dynmaic v. Torres*, 915 S.W.2d 45, 49 (Tex. App.-El Paso 1995)).

[97] *Floyd v. Hefner*, 2006 WL 2844245 (S.D. Tex. Sept. 29, 2006) (citing *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App-Houston 1973)).

[98] *Gearhart Industries, Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 717 (5th Cir. 1984) (citations omitted).

[99] *Id.*

[100] Elizabeth S. Miller, *Fiduciary Duties, Exculpation, and Indemnification in Texas Business Organizations*, State of Bar Texas 12.1 (2017).

[101] *Gearhart*, 741 F.2d at 719.

[102] *Id.*

[103] *Id.* at 720.

[104] *Gearhart*, 741 F.2d at 720.

corporation's affairs.[105] "Unquestionably, under Texas law, a director, as a fiduciary, must exercise his unbiased or honest business judgment in pursuit of corporate interests."[106]

The Plan gave the Liquidated Trustee ownership of all claims of any Debtor and any of the Estates against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise.[107] The Liquidating Trustee is not only the trustee for Hastings, but also for DAC, Hastings' parent limited liability company. While the Trustee has standing to bring breach of fiduciary duty claims on behalf of Hastings, the Trustee does not have derivative standing to assert breach of fiduciary duty claims against DAC.[108]

In the absence of insolvency, Texas law dictates that a director or officer must exercise business judgment for the benefit of the corporation, and not for the benefit of individual shareholders.[109] Further, "a wholly-owned subsidiary's directors owe a fiduciary duty to the subsidiary itself, as well as to the parent corporation."[110] Texas law therefore dictates that a director of a subsidiary owes a fiduciary duty to the subsidiary corporation itself, which is separate from the fiduciary duty to the parent corporation.[111] For this purpose, the fact that Hastings had a single shareholder is of no consequence. The directors' duties run to the corporation, regardless of the number of shareholders.

---

[105] *Id.*

[106] *Id.*

[107] Plan, at 7. The Plan does not reference exclusions or inclusions based on solvency.

[108] The Delaware LLC statute is clear in requiring that a plaintiff "must be a member or an assignee of a limited liability company interest at the time of bringing the action." 6 Del. C. § 18-1002. *See In re Citadel Watford City Disposal Partners, L.P.*, No. 15-11323 (Bankr. D. Del. May 2, 2019); *In re HH Liquidation, LLC*, 590 B.R. 211, 283-85 (Bankr. D. Del. 2018); *In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 466-67 (Bankr. D. Del. 2018).

[109] *Ritchie v. Rupe*, 443 S.W.3d 856, 869 (Tex. 2014).

[110] *Wooley v. Lucksinger*, 61 So.3d 507, 591 (La. 2011).

[111] *Id.*

Finally, TBOC § 21.418 sets out the circumstances under which a corporation can approve of an otherwise valid transaction in which a director of the corporation is interested.[112] The statute states:

> (a) This section applies to a contract or transaction between a corporation and:
>> (1) one or more directors or officers, or one or more affiliates or associates of one or more directors or officers, of the corporation; or
>> (2) an entity or other organization in which one or more directors or officers, or one or more affiliates or associates of one or more directors or officers, of the corporation:
>>> (A) is a managerial official; or
>>> (B) has a financial interest.
> (b) An otherwise valid and enforceable contract or transaction described by Subsection (a) is valid and enforceable, and is not void or voidable, notwithstanding any relationship or interest described by Subsection (a), if any one of the following conditions is satisfied:
>> (1) the material facts as to the relationship or interest described by Subsection (a) and as to the contract or transaction are disclosed to or known by:
>>> (A) the corporation's board of directors or a committee of the board of directors, and the board of directors or committee in good faith authorizes the contract or transaction by the approval of the majority of the disinterested directors or committee members, regardless of whether the disinterested directors or committee members constitute a quorum;
>>
>> or
>>
>>> (B) the shareholders entitled to vote on the authorization of the contract or transaction, and the contract or transaction is specifically approved in good faith by a vote of the shareholders; or
>> (2) the contract or transaction is fair to the corporation when the contract or transaction is authorized, approved, or ratified by the board of directors, a committee of the board of directors, or the shareholders.[113]

*I. Count I: Weinshanker Breach of Fiduciary Duty to Hastings*

The Amended Complaint adequately and plausibly alleges that Hastings has a cause of action against Weinshanker for breach of fiduciary duty. The Amended Complaint alleges several key transactions that were not in the best interests of the corporation, as the transactions benefitted

---

[112] *Corley v. Hendricks*, 2017 WL 1536210 (Tex. App-Ft. Worth, April 27, 2017) (citing TBOC § 21.418 (2012)).

[113] TBOC § 21.418 (2012).

only Weinshanker or one of his directly or indirectly owned entities. The specific allegations include multiple breaches of this duty, and injury to Hastings due to immediate monetary losses and monetary loss based on lack of liquidity that would hinder the company in the future. Further, the Amended Complaint alleges facts showing that Weinshanker repeatedly benefitted personally and engaged in self-dealing through the use of Hastings. The Amended Complaint adequately alleges a disregard for the fiduciary duties owed to the corporation by Weinshanker.

The specific breach of fiduciary duty allegations against Weinshanker include:

> (a) directing Hastings to fund the acquisition of MovieStop, despite no prospect of repayment, and no debt/equity interest in MovieStop, ensuring that Weinshanker would profit directly from any profits;
>
> (b) directing Hastings to purchase at least $3,000,000 of inventory from SPI, with no intention of delivery to Hastings;
>
> (c) directing Hastings to enter into a consignment relationship with SPI, whereby SPI would sell inventory for Hastings on consignment, but never intended to pay Hastings the amounts to which it was entitled;
>
> (d) directing Hastings to handle SPI and MovieStop's administrative activities without compensation;
>
> (e) directing Hastings to transfer $1,621,500 to NECA, despite no corresponding obligation to NECA;
>
> (f) directing Hastings to fund $1.375 million in production costs and inventory related to the Elvis Exhibition, with no documentation of repayment;
>
> (g) directing the non-essential Pathlight Paydown, which depleted assets of Hastings;
>
> (h) failing to present the transactions to the Board for consideration and a required majority vote of disinterested directors pursuant to TBOC § 21.418;
>
> (i) failing to hold a single board meeting;
>
> (j) failing to consult with board members on acquisitions, liquidity and the BofA revolver;
>
> (k) failing to acknowledge the constitution of the Board, and duties and obligations of the Board.[114]

---

[114] Am. Compl. ¶ 109.

Count I meets the standard dictated by *Twombly* and *Iqbal*. The pleading sets forth the elements of the fiduciary duty standards, and states factual allegations, not mere conclusory statements. While the standards do not require detailed factual allegations, the Trustee sufficiently presents facts that support facial plausibility of the claims. Further, the Amended Complaint adequately alleges a breach of TBOC §21.418. Weinshanker was an interested director and the facts adequately allege that he failed to disclose material facts related to the transactions to the other board members. Finally, the Court assumes the veracity of the allegations and determines that the allegations plausibly give rise to entitlement of relief. The Amended Complaint sufficiently lays the foundation for each breach of fiduciary duty claim, and each claim amounts to more than mere recitals of the elements.

*II. Count II: Non-Weinshanker Defendants*

While the Trustee adequately states a claim for breach of fiduciary duty against Weinshanker, it fails to state a claim for breach of fiduciary duty against the non-Weinshanker Defendants on behalf of Hastings. The critical inquiry here involves the third prong of the breach of fiduciary duty: injury to the plaintiff or benefit to the defendant.[115] The Trustee has not shown any injury to Hastings for any conduct by, or, any benefit to, the non-Weinshanker Defendants.

Damages are a crucial element to breach of fiduciary duty, as minority shareholders are often subject to abuse by the hands of majority shareholders, especially in closely held corporations.[116] Here, there are no minority shareholders to protect, as Weinshanker alone controlled Hastings. Further, the Trustee does not allege that the non-Weinshanker Defendants benefitted from any of the alleged wrongdoings. The Amended Complaint alleges only one

---

[115] *Anderton*, 378 S.W.3d at 51.
[116] *Ritchie v. Rupe*, 443 S.W.3d 856, 906 (Tex. 2914).

conclusory allegation that there was a benefit from inaction: "In the case of Herschopf and Shrader, failing to take any action to prevent the foregoing transfers and transactions from occurring, which would have resulted in their respective law firms potentially losing out on legal fee revenues."[117] This conclusory allegation attempts to show that Herschopf and Shrader might have attempted to avoid a loss, but it does not lead to a reasonable inference that either party was rewarded for inaction.

Further, the Trustee has failed to state a claim for breach of duty of care by the non-Weinshanker Defendants. Under Texas law, a director must demonstrate the same care as "an ordinarily prudent man would use under similar circumstances."[118] The court went on to define "similar circumstances," quoting from a treatise on corporations:

> What may be regarded as negligence in one instance, or under certain circumstances, would not be regarded as negligence under other circumstances; the proper performance of their duties is a question of fact and must be determined in each case in view of all the circumstances. In considering such circumstances, regard may be had to the character of the corporation, the condition of its business, the usual method in which such corporations are managed, and any and all other relevant facts that tend to throw light upon the question of the proper discharge of the duty as a director.[119]

Under Texas law, the only director or officer conduct that subjects a defendant to liability, "is that which is characterized by ultra vires, fraudulent, and injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless."[120] Ultra vires conduct includes that which "is beyond the scope of the powers of the

---

[117] Am. Compl. ¶ 127(h).
[118] *Floyd v. Hefner*, 2006 WL 2844245, at *26 (S.D. Tex., Sept. 29, 2006) (citing *McCollum v. Dollar*, 213 S.W. 259 (Texas. Com. App. 1919)).
[119] *Id.* (citing *McCollum v. Dollar*, 213 S.W. at 261 (quoting Thompson on Corp. (2nd Ed.) § 1275)).
[120] *Sneed v. Webre*, 465 S.W.3d 169, 186 (Tex. 2015) (citing *Cates v. Sparkman*, 11 S.W. 846, 849 (Tex. 1889)).

corporation as defined by its charter or the law of the state of incorporation or illegal acts."[121] The Trustee did not allege fraud or ultra vires against the non-Weinshanker Defendants, but instead alleged mere mismanagement in their roles as directors. Under the circumstances, the pleadings do not adequately allege that the non-Weinshanker Defendants breached a duty of care to Hastings, rather that Weinshanker took actions on behalf of Hastings without informing the non-Weinshanker Defendants.

The Trustee also failed to allege breach of duty of loyalty against the non-Weinshanker Defendants. A director violates the duty of loyalty if he or she: "(1) makes a personal profit from a transaction by dealing with the corporation or usurps a corporate opportunity, (2) buys or sells assets of a corporation, (3) transacts business in his or her officer's or director's capacity with a second corporation of which he or she is also an officer or director or is significantly financially associated, or (4) transacts corporate business in his or her officer's or director's capacity with a family member."[122] Notably missing from this definition is a claim predicated on a director's failure to act. The Trustee does not allege that the non-Weinshanker Defendants were consciously avoiding their fiduciary duties or intentionally disregarded red flags, but simply that they took no action.[123]

The Trustee also does not allege that the non-Weinshanker Defendants acted in bad faith in abdication of their duties. Under Texas law, bad faith is irrelevant if there is no showing of ultra vires or fraud, such as the case here.[124] Bad faith conduct occurs when a director "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his [or her]

---

[121] *Campbell v. Walker*, 2000 WL 19143, at *12 (Tex. App.-Houston Jan. 13, 2000).
[122] *Loy v. Harter*, 128 S.W.3d 397, 407-08 (Tex. App.-Texarkana 2004).
[123] Am. Compl. ¶ 127(a)-(h) include the phrase "taking no action".
[124] *Gearhart*, 741 F.2d at 724.

duties."[125] The Trustee failed to demonstrate that the non-Weinshanker directors consciously disregarded their corporate duties or intentionally failed to act on behalf of Hastings.

The Trustee fails to allege that any of the non-Weinshanker Defendants were interested parties. The Amended Complaint implies that Herschopf is interested due to her firm's relationship with Weinshanker, but the Trustee does not allege any facts supporting any alleged personal loyalty. Herschopf did not become imbued with a personal interest solely by joining the board of a company that her law firm represents. The Trustee has failed to plead any facts indicating that the non-Weinshanker Defendants breached the duties of loyalty, care, good faith or fair dealing.

Finally, the Trustee fails to allege that the non-Weinshanker Defendants breached TBOC § 21.418. The non-Weinshanker Defendants are clearly not "interested parties" under TBOC § 21.418; the non-Weinshanker Defendants were unable to approve transactions of which they were unaware. The Amended Complaint does not allege facts to the contrary, and the transactions in which Weinshanker was an interested party were never presented to the board for consideration. Therefore, the Amended Complaint fails to allege facts sufficient to state a claim under TBOC § 21.418.

### III. Count III: Breach of Fiduciary duty by Van Ongevalle

Van Ongevalle held a position at Hastings prior to the buyout, and later became a director, president and the COO of Hastings.[126] The Amended Complaint adequately alleges that Van Ongevalle had a duty of care, loyalty and obedience to Hastings, yet breached the duty of care. Because Van Ongevalle was not only a longtime employee of Hastings, but also a director, president and COO, the Amended Complaint adequately alleges that Van Ongevalle had

---

[125] *In re Walt Disney Derivative Litig.*, 906 A.2d 27, 67 (Del. 2007).
[126] Van Ongevalle became an employee of Hastings in 1992 and was a member of the Board from November 30, 2014 through December 9, 2015. Am. Compl. ¶ 132. Van Ongevalle was the President and Chief Operating Officer of Hastings from the buyout date through December 9, 2015. Am. Compl. ¶ 133.

knowledge of the challenged transactions, and knew they were not in the best interest of Hastings.

The specific breach of fiduciary duty claims against Van Ongevalle include:

a. Taking no action to prevent Hastings' funding of the SPI and MovieStop transactions, despite being extensively involved in the negotiation of both transactions;

b. Taking no action while Weinshanker directed Hastings to fund the operations of MovieStop, despite there being no reasonable prospect of repayment given MovieStop's severe financial distress;

c. Taking no action while Weinshanker directed Hastings to continue operating under a sham "consignment" relationship with SPI, whereby SPI would sell inventory for Hastings on consignment, but never intended to pay Hastings the amounts to which it was entitled;

d. Taking no action while Weinshanker directed Hastings to handle all of SPI's and MovieStop's back office functions, as well as a host of other administrative functions on behalf of Weinshanker's other entities, which went unreimbursed;

e. Taking no action while Weinshanker directed Hastings to make the NECA Transfer to NECA, despite the fact that Hastings had no corresponding obligation to NECA, NECA never intended to repay Hastings, and the payment was for a debt owed by SPI to NECA or potentially Weinshanker himself;

f. Taking no action while Weinshanker directed Hastings to fund $1.375 million in production costs and inventory advances to the Elvis Exhibition for the benefit of EAC, for which EAC did not possess the means or intent to repay Hastings, and without a documented mechanism for repayment;

g. Taking no action while Weinshanker directed the Pathlight Paydown, which resulted in Hastings losing $5 million of liquidity that it could ill-afford to be without;

h. Failing to hold, participate in or even request that Weinshanker convene, a single Board meeting, in violation of TBOC and the By-Laws;

i. Failing to consult with Weinshanker and other directors, in their capacities as directors, on material matters pertaining to Hastings, including the SPI and MovieStop acquisitions, the NECA Transfer, the Elvis Transfers, the liquidity crisis caused by Weinshanker's diversion of funds to his other entities, the Pathlight Paydown, and the depletion of Hastings' availability of the BofA revolver; and

j. Failing to understand or acknowledge the constitution of the Board and the duties and obligations of the Board.[127]

---

[127] Am. Compl. ¶ 144 (a)-(j).

These actions, and inactions, adequately allege a breach of duty of care, as the actions exhibit a lack of diligence in managing corporate affairs, without regard to the consequences of these actions and failures to act. While the Amended Complaint adequately alleges a breach of duty of care, it does not adequately allege breach of loyalty or obedience. The Amended Complaint fails to plead facts showing that Van Ongevalle was personally interested in the outcome of the Hastings transactions, or personally benefitted from them. Therefore, the Amended Complaint is insufficient as to a breach of duty of loyalty claim. Further, the Amended Complaint does not allege a breach of duty of obedience, as ultra vires acts were not pled. The Amended Complaint does not allege that Van Ongevalle committed ultra vires acts or acted fraudulently. The duty of obedience claim also fails.

Finally, the Amended Complaint fails to allege a breach under TBOC. § 21.418. The Amended Complaint fails to allege that Van Ongevalle had a financial interest in, or held a managerial position with, any of Weinshanker's entities apart from Hastings. Under the *Twombly* and *Iqbal* standard outlined above, the Amended Complaint adequately presents a breach of fiduciary duty of care, but fails to adequately present a breach of fiduciary duty of loyalty, duty of obedience or breach of TBOC § 21.418.

## II. Breach of Fiduciary Duty to Hastings' Creditors

### i. Choice of Law

Under a choice of law analysis, the court must first determine whether apparently conflicting laws actually conflict.[128] If no conflict exists, then a choice of law analysis is not needed.[129] Such is the case here. While the first set of fiduciary duty claims involve duties to the

---

[128] *Janvey for Stanford Receivership Estate v. Proskauer Rose, LLP*, 2018 WL 3968933 (N.D. Texas April 17, 2018) (citing *Covington v. Alban Offshore Ltd.*, 650 F.3d 556, 558-59 (5th Cir. 2011)).
[129] *Id.*

corporation, the second set involves duties to the creditors. Under Texas law, breach of fiduciary duty claims become actionable by a creditor only when the corporation is insolvent.[130] Because both Texas and Delaware address the issue of solvency through analyses that reach the same result, both Texas and Delaware law can be used to evaluate this issue.

*ii. Substantive Law*

In Count One of the Amended Complaint, the Trustee alleges that once Hastings entered the zone of insolvency, Weinshanker's fiduciary duties of obedience, care, loyalty, good faith and fair dealing ran not only to Hastings, but to its creditors.[131] In Count Two, the Trustee alleges that when Hastings entered the zone of insolvency, Herschopf, Shrader, and Marrs owed fiduciary duties to Hastings' creditors.[132] In Count Three, the Trustee alleges that Van Ongevalle's fiduciary duties of obedience, care, loyalty, good faith and fair dealing ran to Hastings' creditors as well.[133] In each of these claims, Defendants argue that the Trustee lacks standing to pursue a breach of fiduciary duty claim on behalf of creditors.

The creditors of an insolvent corporation have standing to bring derivative actions against directors for breach of fiduciary duty.[134] The *Gheewalla* Court explained:

> When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.
>
> Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against the directors on behalf of the corporation for breaches in fiduciary

---

[130] *Fagan*, 494 S.W.2d at 628-29. Some Texas case law, such as *Fagan*, requires insolvency and cessation of business before fiduciary duties attach. However, this does not change the analysis for this case, as the Trustee failed to adequately allege insolvency, causing the claim to fail regardless of which test is applied.
[131] Am. Compl. ¶ 102.
[132] *Id.* ¶ 117.
[133] Am. Compl. ¶ 135.
[134] *U.S. Bank Nat. Ass'n v. Verizon Communications Inc*, 817 F.Supp.2d 934, 943 (N.D. Texas 2011) (citing *Gheewalla*, 930 A.2d 92, 101 (Del. 2007)).

duties. The corporation's insolvency "makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value."[135]

The confirmed Plan transferred any rights of the Debtors to the Trustee to pursue claims against insiders, including derivative claims for breach of fiduciary duty.[136]

When a corporation is solvent, shareholders have the right to bring derivative actions on behalf of the corporation against directors for breach of fiduciary duty.[137] However, this analysis changes when the debtor becomes insolvent. Insolvency is defined as having liabilities that exceed the value of assets, having stopped paying debts in the ordinary course, or being unable to pay them as they come due.[138] Which constituency has the right to pursue the breach of fiduciary duty claim is determined whether and when insolvency occurs. However, the Defendants argue that the Amended Complaint has not adequately alleged that the Debtors were insolvent.

To show insolvency, a plaintiff must allege either that a corporation was insolvent or became insolvent based on the alleged misconduct.[139] The Amended Complaint alleges the following:

96.   All or substantially all of the acts and omissions of Weinshanker and the non-Weinshanker Defendants occurred while Hastings was clearly insolvent on a balance sheet basis.

97.   As an initial matter, Hastings' insolvency was propelled by the Weinshanker-led leveraged buyout, which added $15 million of secured debt to the company's

---

[135] 930 A.2d at 101-02 (emphasis in original; citations omitted).

[136] The claims are solely derivative, as Delaware courts have held that creditors cannot pursue direct claims for breach of fiduciary duty. *Quadrant Structured Prod. Co., Ltd. v. Vertin*, 2014 WL 509948, *10 (Del. Ch. Oct. 1, 2014) (determining that, directors never owe fiduciary duties directly to creditors because (1) directors of solvent corporations do not owe any fiduciary duty to creditors, and (ii) the *Gheewalla* Court held that creditors of an insolvent corporation have no right to assert direct claims against corporate directors).

[137] *Gheewalla*, 930 A.2d at 101.

[138] Black's Law Dictionary (10th ed. 2014).

[139] *In re Tropicana Entertainment, LLC*, 520 B.R. 455, 471 (2014) (citing *Trenwick America Litig. Trust v. Ernst & Young, LLP.*, 906 A.2d 168, 202 (Del. Ch. 2006)). The *Trenwick* court rejected a complaint that failed to plead facts supporting a rational inference that the corporation was insolvent before any of the challenged transactions or that any of the challenged actions would, when consummated, leave the corporation insolvent.

books. As a result, Hastings was insolvent by no later than July 28, 2014 (if not as of the Buyout Date itself [i.e., July 15, 2014]).

98.     This insolvency substantially increased as a result of the acts and omissions of Weinshanker and the non-Weinshanker Defendants. By causing (in the case of Weinshanker) and facilitating or otherwise enabling (in the case of the non-Weinshanker Defendants) a series of disastrous and costly transactions that resulted in tens of millions of dollars of net cash outflows from Hastings, Hastings became progressively more insolvent, ultimately becoming unable to service its mounting secured and unsecured indebtedness, and eventually resulting in its chapter 11 filings.

118.    Hastings became insolvent no later than July 28, 2014 (if not the Buyout Date), with the magnitude of such insolvency increasing in subsequent periods, through the petition date.

The Amended Complaint's recitation of the word "insolvency" is not enough to support a plausible claim under the *Twombly* standard. Neither can the Court accept mere conclusory statements. The Trustee's allegations do not move the ticker from conceivable to plausible. "To meet the burden of proving insolvency, a plaintiff must plead facts showing that the debtor-corporation has either (1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the fact thereof, or (2) an inability to meet maturing obligations as they fall due within the ordinary course."[140] The Amended Complaint contains details regarding the Defendants' alleged mismanagement, but despite allowing amendment to the original complaint, the Trustee continues to plead overly broad statements of insolvency.

Having failed to adequately plead that Hastings was insolvent or became insolvent as a result of Defendants' actions, the Trustee's portion of claims numbered one, two, and three for breach of fiduciary duty owed to Hastings' creditors fail. The Motion to Dismiss these portions of the claims will be granted.

---

[140] *Id.* (citing *Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 792 (Del. Ch. 2004).

III. *Aiding and Abetting*

i. *Choice of Law*

Delaware's aiding and abetting standard is the same as Texas' standard, requiring knowing

participation in a breach of another's fiduciary duty.[141] However, some Delaware case law holds

that a party with a direct fiduciary relationship cannot aid and abet a breach of fiduciary duty.

Texas courts have not spoken on whether aiding and abetting claims may be brought only against

non-fiduciaries. But, Texas courts often look to Delaware law as persuasive authority;[142] therefore,

I will examine the counts under similar Texas and Delaware law, but also look to specific Delaware

provisions as persuasive authority.

ii. *Substantive Law*

Aiding and abetting has been recognized as a "dependent" claim. Therefore, the derivative

nature of an aiding and abetting claim will exist only with the success of the breach of fiduciary

duty claim. The Restatement (Second) of Torts § 876 states "for harm resulting to a third person

from the tortious conduct of another, one is subject to liability if he...knows that the other's

conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other

so to conduct himself."[143] To establish a valid claim for aiding and abetting a breach of fiduciary

duty, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) a breach of the

fiduciary's duty, ... (3) knowing participation in that breach by the defendants, and (4) damages

---

[141] *Gilbert v. El Paso Co.*, 490 A.2d 1050 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990).
[142] *Neurobehavioral Assocs., P.A. v. Cypress Creek Hosp., Inc.*, 995 S.W.2d 326, 332 n.12 (Tex. App.-Houston 1999) (looking to Delaware's corporate law for guidance on winding up a dissolved entity's affairs); *In re Aguilar*, 344 S.W.3d 41, 47 (Tex. App.-El Paso, 2011)(citing Delaware law for advancement and stating that courts throughout the country look to Delaware for guidance on corporate law);
[143] *West Fork Advisors LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 921 (Tex. App.-Dallas 2014) (citing Restatement (Second) of Torts § 876(b) (1979)).

proximately caused by the breach."[144] "A defendant knowingly participates in a breach of fiduciary duty if it acts with the knowledge that the conduct advocated or asserted constituted a breach."[145]

The Restatement (Second) of Torts § 876 has been applied to determine whether a defendant knowingly participated in a breach of fiduciary duty. Section 876 provides that a defendant can be liable for "harm resulting from the tortious conduct of another" if the defendant:

> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.[146]

Further, the Supreme Court of Delaware determined that, "knowing participation in a board's fiduciary breach requires that the third-party act with the knowledge that the conduct advocated or assisted constitutes a breach."[147] "The aider and abettor must act with scienter."[148] "The aider and abettor must act 'knowingly, intentionally, or with reckless indifference… that is, with an illicit state of mind.'"[149]

The Trustee fails to allege that the non-Weinshanker Defendants and Van Ongevalle had the necessary scienter to be liable for aiding and abetting Weinshanker. The Amended Complaint repeatedly alleges that the non-Weinshanker Defendants and Van Ongevalle "knew or should have known" of Weinshanker's actions and consequences, but fails to allege specific facts showing actual knowledge.[150] "Should have known" is not enough to plead a claim for aiding and abetting,

---

[144] *In re Syntax-Brillian Corp.,* 573 Fed.Appx. 154, 162 (3d Cir. 2014) (citing *Malpiede v. Townson,* 780 A.2d 1075, 1096 (Del. 2001)).

[145] *Id.*

[146] Restatement (Second) of Torts § 876 (1979).

[147] *RBC Capital Markets, LLC v. Jervis,* 129 A.3d 816, 861 (Del. Ch. 2015) (citing *Malpiede,* 780 A.2d at 1097)).

[148] *Id.* (citing *In re Oracle Corp.,* 867 A.2d 904, 931 (Del. Ch.2004)).

[149] *Id.*

[150] Am. Compl. ¶ 150, 151, 152, 154, 155, 156, 158, 164, 165, 166, 168.

and the Amended Complaint does not allege adequate information to show that Van Ongevalle knew that Weinshanker's actions would result in a breach of fiduciary duty.[151]

Delaware law generally prohibits aiding and abetting claims against parties that already stand in direct fiduciary relationships.[152] This is because wrongful conduct on the part of the fiduciary would give rise to direct liability for a breach of duty, rather than secondary liability on the theory of aiding and abetting. I previously established that the non-Weinshanker Defendants and Van Ongevalle had a fiduciary duty to Hastings. Under Delaware law, as persuasive authority, the aiding and abetting claims would be prohibited due to the non-Weinshanker Defendants and Van Ongevalle's direct fiduciary relationships.

Accordingly, the Amended Complaint fails to adequately allege aiding and abetting claims against the non-Weinshanker Defendants and Van Ongevalle.

*IV. Alter Ego/Veil Piercing*

To state a claim for veil piercing, the plaintiff must plead facts supporting an inference that the corporation, through an alter ego, created an entity designed to defraud its investors and creditors.[153] "Specific facts a court may consider when being asked to disregard the corporate form include: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant

---

[151] *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat. Ass'n*, 2011 WL 864421 (D. Del. March 9. 2011) (actual knowledge is required to establish scienter for aiding and abetting claims).

[152] *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990) ("It is well settled that a third party who knowingly participates in the breach of a fiduciary's duty becomes liable to the beneficiaries of the trust relationship...[Among the necessary elements is] knowing participation in that breach by a party not in a direct fiduciary relationship."); *Weinberger Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) (aiding and abetting liability "requires...a knowing participation in that breach by the defendants who are not fiduciaries."

[153] *Doberstein v. G-P Industries, Inc.*, 2015 WL 6606484 (Del. Ch. October 30, 2015) (citing *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003)).

shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade of the dominant shareholder."[154] The decision to pierce the corporate veil generally results from a combination of several factors and an overall element of unfairness or injustice.[155] Importantly, Delaware does not take such allegations lightly, therefore a plaintiff must do more than show that one corporation is an alter ego of another in a conclusory fashion in order for the court to disregard their separate legal existence.[156] While not impossible, persuading a Delaware court to disregard the corporate entity is a difficult task.[157]

The Amended Complaint alleges that DAC's "corporate" veil should be pierced. Given that DAC is a Delaware limited liability company, Delaware law controls. The complaint must establish plausibility of a claim that defendants committed the wrongdoing. As *Iqbal* states, "a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[158] The claim must establish plausibility by factual allegations, and not mere recitals of the elements of the claim or conclusory statements.[159]

The Amended Complaint adequately alleges that corporate formalities were not observed. The Amended Complaint alleges that no board meetings were held, no board members were consulted on material matters pertaining to the various acquisitions and transfers, no board members were consulted concerning the depletion of Hastings' availability under the BofA

---

[154] *Id.* (quoting *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010)).
[155] *Id.*
[156] *Id.*
[157] *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954 (Del. Ch. July 1, 2005) (citations omitted).
[158] *Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 556).
[159] *Twombly*, 550 U.S. at 545.

revolver, and no constitution or duties of the board were acknowledged.[160] Therefore, the Court

will deny the motion to dismiss Count IV.

*V. Attorneys' Fees and Costs*

Under the American Rule, "absent express statutory provisions to the contrary, each party

involved in litigation will bear only their individual attorneys' fees no matter what the outcome of

the litigation."[161] Awarding attorney's fees is within the discretion of the court and an exception

exists in equity when it appears that a party, or its counsel, has proceeded in bad faith.[162] Given

that the attorney's fees are derivative of substantive claims, the request for attorney's fees fails for

all dismissed claims. As to the remaining claims, awarding attorney's fees is within the discretion

of the Court. The Court finds no grounds to indicate bad faith and denies the claim for attorney's

fees.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[160] Am. Compl. ¶ 109.
[161] *William Penn Partnership v. Saliba*, 13 A.3d 749 (Del. 2011) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *4 (Del.Ch. May 11, 2001)).
[162] *Rice v. Herrigan-Ferro*, 2004 WL 1587563 (Del. Ch. July 12, 2004).

## **CONCLUSION**

For the foregoing reasons, the Motions to Dismiss are denied in part and granted in part. The Motion to Dismiss Count I is denied with respect to Weinshanker's breach of fiduciary duty to Hastings, but granted as to Weinshanker's breach of fiduciary duty to Hastings' creditors. The Motion to Dismiss Count III with respect to Van Ongevalle's breach of the fiduciary duty of care is denied, but granted as to Van Ongevalle's breach of duty of loyalty and duty of obedience. The Motion to Dismiss Count VI is denied. The Motions to Dismiss Counts II, IV, V, VII are granted. An appropriate order follows.

BY THE COURT:

DATED: June 13, 2019

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT